IN RE POFF'S GUARDIANSHIP.

Opinion rendered June 14, 1907.

(103 S. W. Rep. 765).

*Courts of Indian Territory—Probate Jurisdiction.*

> By act of Congress June 28, 1898, c. 517, 30 Stat. 504, § 28, tribal courts of the Indian Territory were divested in all cases of all jurisdiction, the courts were abolished and their jurisdiction given to the United States ourts. Section 29 (page 505) provided however that this should not be the case if the part of the act known as the Atoka Agreement were not ratified by a certain time. In case the agreement were ratified the act only applied to the Choctaw and Chickasaw tribes when it did not conflict with the Atoka Agreement. This agreement gave exclusive jurisdiction to the United States Courts in all cases involving title occupation, ownership, possession of real estate and of all persons in the territory charged with certain crimes. It was ratified within the specified time and held to repeal the Act of Congress in so far as to withdraw probate jurisdiction from the tribal courts of the Choctaw and Chickasaw nations and vest it in the territorial court. Also that the territorial courts had no jurisd.ction to appoint a guardian for a Chickasaw minor prior to act of Congress, April 28, 1904, c. 1824, 33 Stat. 573 which gave the United States Courts all jurisdiction.

Appeal from United States Court for the Southern District of the Indian Territory; before Justice Townsend October 30, 1902.

Application for the appointment of Charles Anhalt, as guardian of the property of Maggie May Poff, a Chickasaw minor over 14 years of age. From a judgment refusing to confirm appointment made by the clerk in vacation, the petitioner appeals. Affirmed.

*J. W. Hocker*, for appellant.

*W. F. Bowman*, for appellee.

CLAYTON, J.   This is an appeal from the judgment of the United States Court for the Southern District at Purcell, rendered on October 7, 1902, refusing to confirm the appointment made by the clerk in vacation, of the appellant as guardian of his sister, a minor over the age of 14 years.   Both are citizens by blood of the Chickasaw Nation, and residing therein.

The only question presented for our consideration is: Did the United States Courts in the Indian Territory, prior to the passage of the act of Congress of April 28, 1904, c. 1824, 33 Stat. 573, have power to appoint guardians for the persons and estates of Indians by blood?   The legislation of Congress relating to the jurisdiction of the United States Courts in the Indian Territory had prior to the act of June 7, 1897, c. 3, 30 Stat. 83, did not give such courts any jurisdiction over the estates of deceased Indians, or any power to appoint guardians of the minor children of Indians.   This whole matter was left to the exclusive jurisdiction of the tribal courts.   The act of June 7, 1897, provides as follows:   "That on and after January first, 1898, the United States Courts in said Territory shall have original and exclusive jurisdiction and authority to try and determine all civil causes in law and equity thereafter instituted and all criminal causes for the punishment of any offense committed after January 1, 1898,   *     *     *; and the laws of the United States and the State of Arkansas in force in said Territory shall apply to all persons and property therein, irrespective of race, said courts exercising jurisdiction thereof as now conferred upon them in the trial of like causes. *     *     *     *     *     If it be conceded that this statute is broad enough to confer upon the United States Courts jurisdiction of all probate and guardianship matters of the Indian

tribes, and of divesting their courts of that jurisdiction, has it not been repealed by subsequent legislation? Upon a careful reading and a fair interpretation of the provisions of Act June 28, 1898, c. 517, 30 Stat. 495, the Curtis bill and of the Atoka agreement, which is a part of it, it will be found, we think, that all acts, including section 28 of the Curtis bill itself, relating to jurisdiction prior thereto, were repealed, and that the Indian courts were fully restored to this jurisdiction, which did not pass from them until the act of April 28, 1904. Section 28 of the Curtis bill, supra, provides: "That on the first day of July 1898, all tribal courts in the Indian Territory shall be abolished, and no officer of said courts shall thereafter have any authority whatever to do or perform any act theretofore authorized by any law in connection with said courts, or to receive any pay for same; and all civil and criminal causes then pending in any such court shall be transferred to the United States Court in said Territory by filing with the clerk of the court the original papers in the suit provided, that this section shall not be in force as to the Chickasaw, Choctaw and Creek tribes or nations until the first day of October, 1898." This section clearly divested the tribal courts of all jurisdiction in all cases. It abolishes their courts, and confers upon the United States Courts jurisdiction in all matters, including of course probate and guardianship matters as to the Chickasaw, Choctaw and Creek Nations after October 1, 1898. But by the provisions of section 29 following this provision of the act was only to be in force and take effect as to the Choctaw and Chicksasaw Nations if the Atoka agreement, which was a part of the act, should not by a certain time named in the act be ratified. The provisions of section 29 alluded to, after providing the mode and manner of conducting the election and canvassing the vote, etc., says: "And if said agreement  *  *  * be so ratified, the provisions of this act shall then only apply to said tribes where the same do not conflict with the provision

of said agreement," except as to section 14 of the act, which was not to be affected by any conflict. The agreement was ratified at the time prescribed, and it contains provisions so radically in conflict with the provisions of section 28, that, if it is to have any meaning at all, it renders section 28 void by its very terms. Section 29, in prescribing and setting out the jurisdiction that should be exercised by the United States Courts, specifically names the classes of cases civil and criminal, to which they, the Indians, are to be subject: It provides as follows: "It is further agreed that the United States Courts now existing or that may hereafter be created, in the Indian Territory, shall have exclusive jurisdiction of all controversies growing out of titles, ownership, occupation, possession, or use of real estate, coal and asphalt in the territory occupied by the Choctaw and Chickasaw tribes; and of all persons charged with homicide, embezzlement, bribery and embracery, breaches or disturbances of the peace, and carrying weapons, hereafter committed in the territory of said tribes, without reference to race or citizenship of the person or persons charged with such crime; and any citizen or officer of the Choctaw or Chickasaw Nation charged with such crime shall be tried and if convicted punished as though he were a citizen or officer of the United States." And sections of Mansfield's Digest relating to embezzlement and bribery and embracery are extended so as to include within their meaning the officers of the Choctaw and Chickasaw Nations. But nowhere in the act is mentioned probate or guardianship jurisdiction.

The next provision is a surrender of a part of the legislative power of these tribes, towit, that their legislation pertaining to that class of enactments named in the bill is not to be of any force until approved by the President of the United States. Then in conclusion of the whole matter is the following provision. It is further agreed, in view of the modifications of legislative authority and judicial jurisdiction herein provided,

and the necessity of the continuance of the tribal governments so modified, in order to carry out the requirements of this agreement, that the same shall continue for a period of eight years from the fourth day of March, 1898." If section 28 is allowed to stand, what "modification of judicial jurisdiction" was alluded to by this section? Our courts already had the jurisdiction named in the agreement. Why set out this jurisdiction of the United States Courts if it were not all we were to have? Or, if we were to retain full jurisdiction, why set out only a part? Or, what is still more remarkable, if having this jurisdiction already, and vastly more, why set it out at all? This case presents a most excellent illustration of the maxim "Expressio unius, exclusio alterius." Congress, by the provisions of the agreement, ingrafted into the statute, having specifically named the cases and the subject-matter of the jurisdiction of these courts, as it relates to the Choctaws and Chickasaws, excludes and forbids the exercise of all others. And the jurisdiction of probate and guardianship matters not having been named, it was not conferred; and therefore the effect of this legislation is not only to destroy the force of section 28 of the Curtis bill, but to repeal all preceding legislation in conflict with its provisions leaving the act of June 7, 1897, in force only so far as it confers jurisdiction on the class of cases and subject-matter named in the agreement. And thus it stood until the passage of Act April 28, 1904, c. 1824, 33 Stat. 573, which took from the Indian courts all jurisdiction and conferred it on the United States Courts, specially mentioning probate and guardianship matters relating to Indian estates and minors. As this case arose and was decided after the passage of the Curtis bill, and before the passage of the act of April 28, 1904, the United States Court in the Chickasaw Nation had no jurisdiction to appoint the applicant as guardian of the person or estate of an Indian minor.

The judgment of the court below is affirmed.

GILL, C. J. and LAWRENCE, J., concur.