SADIE KAPIGIAN *v.* KRIKOR DER MINASSIAN.

Worcester.    March 29, 1912. — June 19, 1912.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DeCOURCY, JJ.

*Marriage and Divorce.   Domicil.   Conflict of Laws.   Evidence,* Of intention.

At the trial of a libel to annul a marriage between the libellant and the libellee in this Commonwealth on the ground that the libellee had a former wife living, it appeared that the libellee was a Christian domiciled in Turkey and there had married a wife who was a Christian, that thereafter the libellee had come to this country intending to return to his domicil in Turkey, and had changed that intention only when he learned that his former wife, who had remained in Turkey, had married a Mohammedan and had adopted the Mohammedan religion, and that after this he married the libellant.  It was found by the trial judge that by the law of Turkey when a wife changes from the Christian to the Mohammedan religion and marries a Mohammedan her previous marriage becomes null and void.  *Held,* that, Turkey having been the domicil of the libellee as well as that of his former wife at the time of an event which under the law of that country dissolved their marriage, and such law being in its essence not contrary to the moral sense of civilized nations nor inconsistent with our policy, the dissolution of the marriage would be recognized by our courts, and that accordingly the libellee was not under a disability at the time of his marriage with the libellant.

A person whose domicil at a certain time is in issue may testify as to his intention at that time.

RUGG, C. J.    This is a libel for a decree of nullity of the marriage between the libellant and libellee solemnized in this Commonwealth in 1908, on the ground that the libellee had a former wife living.   These are the circumstances:   The libellee was domiciled in Turkey, was a Christian, and there married a wife also a Christian, with whom he lived.   In 1902, owning a small farm in Turkey, he left his wife at the home of a cousin there, and came to this country intending to earn some money and return to his farm in Turkey.   He supported his wife by sending her money for about four years, when he ceased, because he learned that she had married a Mohammedan and become a Moslem.   Thereafter he gave up his intention to return to Turkey, and decided to make his permanent home in Massachusetts.   It was found by the

judge of the Superior Court * to be the law of Turkey that when a wife renounces Christianity and embraces the Mohammedan religion and marries an adherent of that faith her previous marriage becomes "null and void," and that "the courts in Turkey consider that her first husband is no longer her husband, and that there is no longer any marriage tie between such wife and her former husband." The domicil of the libellee continued to be in Turkey until after he learned of the marriage of his wife with a Moslem in Turkey. The libellant was ignorant of those facts until after her marriage with the libellee, and upon learning them ceased to live with him and brought this petition. The validity of her marriage depends upon whether the libellee's former marriage was in force at the time of his marriage with the libellant.

No difficulty arises in determining the country of domicil of the libellee. It has been expressly found that Turkey continued to be his domicil until after he learned of the occurrences which under the law of Turkey put an end to his marriage with his first wife. Her domicil was then and seemingly always has been in Turkey, for it does not appear that she ever has lived in any place outside Turkey. It is a general principle of law recognized by international comity that every sovereign State has the right to determine the domestic and social status of those having their domicil within its territory. Marriage is a status which is governed by the law of the domicil of the parties. The controlling principle was stated strongly by Lord Penzance in *Wilson* v. *Wilson*, L. R. 2 P. & D. 435, at 442, in language quoted with approval in *Le Mesurier* v. *Le Mesurier*, [1895] A. C. 517, 540, as follows: "The only fair and satisfactory rule to adopt on this matter of jurisdiction is to insist upon the parties in all cases referring their matrimonial differences to the courts of the country in which they are domiciled. Different communities have different views and laws respecting matrimonial obligations, and a different estimate of the causes which should justify divorce. It is both just and reasonable, therefore, that the differences of married people should be adjusted in accordance with the laws of the community to which they belong, and dealt with by the tribunals which alone can administer those laws. An honest adherence to this principle, more-

* *Sanderson*, J. He made an order that the libel be dismissed, and reported the case for determination by this court.

over, will preclude the scandal which arises when a man and woman are held to be man and wife in one country and strangers in another." This is the rule which has been followed by this court. *Hopkins* v. *Hopkins,* 3 Mass. 158. *Barber* v. *Root,* 10 Mass. 260, 265. *Commonwealth* v. *Lane,* 113 Mass. 458, 466. *Sewall* v. *Sewall,* 122 Mass. 156, 160. *Watkins* v. *Watkins,* 135 Mass. 83. *Blaisdell* v. *Bickum,* 139 Mass. 250. It prevails generally. *Haddock* v. *Haddock,* 201 U. S. 562, 570, 582, 583. *De Meli* v. *De Meli,* 120 N. Y. 485. *Harvey* v. *Farnie,* 8 App. Cas. 43. *Turner* v. *Thompson,* 13 P. D. 37. *Roth* v. *Roth,* 104 Ill. 35. *Undy* v. *Undy,* L. R. 1 H. L. 441. In reason the principle should apply as well to divorce as to marriage. The governing force of international policy is as strong in the one case as in the other. In *Le Mesurier* v. *Le Mesurier,* [1895] A. C. 517, it was held that "according to international law, the domicil for the time being of the married pair affords the only true test of jurisdiction to dissolve their marriage." To the same effect is *Shaw* v. *Gould,* L. R. 3 H. L. 55, 81.

The principle is laid down generally by writers of recognized standing upon international law and conflict of laws that divorce as well as marriage is determined by the law of the country of domicil of the parties. The rule is stated in Story on Conflict of Laws, (8th ed.) § 201, in these words: "There is no doubt that a divorce regularly obtained, according to the jurisprudence of the country where the marriage is celebrated and where the parties are domiciled, will be held a complete dissolution of the matrimonial contract in every other country." 1 Wharton, Conflict of Laws, (3d ed.) § 223. Wheaton's International Law, (8th ed.) § 151. Savigny's Private International Law, (Guthrie's 2d ed.) 148. Dicey, Conflict of Laws, 387. Taylor's International Public Law, 209. Piggott on Foreign Judgments, 275. See *Leshinsky* v. *Leshinsky,* 5 N. Y. Misc. 495, and *Miller* v. *Miller,* 70 N. Y. Misc. 368. Kindred questions have arisen as to marriage and divorce among Indians living in tribal relations and not subject to the civil law of the several States in whose territory they dwelt, who are regarded as wards of the United States possessing as to the several States some of the attributes of foreign nations. Dissolution of marriage in accordance with tribal custom has been recognized as valid by all courts which have had occasion to adjudicate rights dependent upon them. *Kobogum* v. *Jackson*

*Iron Co.* 76 Mich. 498. *Compo* v. *Jackson Iron Co.* 50 Mich. 578. *Johnson* v. *Johnson,* 30 Mo. 72. *Boyer* v. *Dively,* 58 Mo. 510. *La Riviere* v. *La Riviere,* 77 Mo. 512. *Morgan* v. *McGhee,* 5 Humph. 13. *Wall* v. *Williamson,* 11 Ala. 826; *S. C.* 8 Ala. 48. *Earl* v. *Godley,* 42 Minn. 361. *Jones* v. *Laney,* 2 Texas, 342, 348. See *Kalyton* v. *Kalyton,* 45 Ore. 116.

There would be no hesitation in giving faith and credit to a dissolution of marriage between subjects of a foreign State if it was proved by a decree of a court of competent jurisdiction. But divorce as well as the marriage ceremony is a matter of social convention or governmental regulation. It is not in the nature of things controlled by immutable law, prevalent wherever civilization or Christianity exists. There is a wide diversity between the laws of different nations upon these subjects. The principle of international law being that the law of the country of domicil of the spouses affords the guide for deciding upon the commencement, continuance and ending of marriage, in reason it must govern divorce as well as every other incident of matrimony.

No conflict of jurisdiction arises in the case at bar. It is indisputable that the Turkish government had jurisdiction of both parties, because the marriage was solemnized in Turkey according to its laws, between a man and woman, the domicil of origin of each of whom was Turkey, a domicil which never had been lost by either, and who have lived together in Turkey and nowhere else as husband and wife. Hence both were subject to the law of Turkey in respect of matrimonial status. It does not matter that a circumstance rather than a decree of court constitutes under the domiciliary law a dissolution of the marriage tie. We are not concerned with forms of practice, but with the ascertainment of the law of a foreign country. When that law is ascertained, it becomes our duty under principles of international comity to give effect to that law so far as it affects the status of a subject of that foreign sovereign. It is possible that some law of a heathen country would be so abhorrent to civilization that it would not be recognized, even as establishing the status of its subjects. However that may be, such a question is not presented here. See *Ross* v. *Ross,* 129 Mass. 243, 246. In the case at bar under the law of Turkey, a public and notorious fact, which constitutes a ground for divorce in most if not all civilized countries allowing any di-

vorce, is treated as of itself severing the marriage relation. There is nothing in this law so revolting to the moral sense of a Christian nation as to prevent recognition and enforcement by its courts. It stands upon the same footing as the provisions of the St. of 5 & 6 Will. IV. c. 54, known as Lord Lyndhurst's Act (in force until the enactment of St. 6 Edw. VII. c. 30, and St. 7 Edw. VII. c. 47), to the effect that the marriage of a widower with his deceased wife's sister was absolutely void without any decree of court. *Regina* v. *Chadwick,* 11 Q. B. 205, 235.

The result is that the domicil of the libellee being Turkey at the time of the happening of an event, which under the law of that country dissolved the marriage, such law being in its essence not contrary to the moral sense of civilized nations nor inconsistent with our policy, that marriage should be recognized by our courts as dissolved. It follows that the libellee was not under a legal disability at the time of his marriage with the libellant, and his marriage with the libellant was valid.

The testimony of the libellee touching his intent as to his domicil was competent. *Carriere* v. *Merrick Lumber Co.* 203 Mass. 322. *Marcy* v. *Shelburne Falls & Colrain Street Railway,* 210 Mass. 197.

*Petition dismissed.*

The case was submitted on briefs.

*J. E. Sullivan & D. F. O'Connell,* for the libellant.

*P. J. O'Connell & J. P. Halnon,* for the libellee.