## ZIMMERMAN v. HOLMES.

No. 4882—Opinion Filed June 27, 1916.
(159 Pac. 303.)

**1. Divorce — Indians—Jurisdiction — Tribal Court.**

Section 28 of the act of Congress of June 28, 1898 (30 Stat. 495, c. 517), abolishing the tribal courts of the Choctaw and Chickasaw Nations, being in conflict with section 29 of the Atoka Agreement, ratified by the voters of the Choctaw and Chickasaw Nations on August 24, 1898, never became effective, and the tribal courts in the Choctaw Nation had

power to grant divorces until the passage of the act of April 28, 1904 (33 Stat. 573, c. 1824).

## 2. Marriage—Presumption of Validity—Presumption of Prior Divorce.

Where a man and woman live together for a number of years, and hold themselves out to the public as man and wife, and have children, even though the testimony shows that one of them had a living husband or wife, in the absence of proof to the contrary, the law will presume that there has been a divorce, and that the second marriage was legal.

## 3. Indians—Lands—Deeds.

Under section 22 of the act of Congress of April 26, 1906 (34 Stat. 137, c. 1876) in order to give validity to a deed executed by a husband who succeeded to the possession of his wife's allotment on her death by curtesy, he being a full-blood Indian, the same must have been approved by the Secretary of the Interior.

(Syllabus by Dudley, C.)

Error from District Court, Pontotoc County; A. H. Ferguson, Assigned Judge.

Action by Archibald Holmes against Andrew Zimmerman. Judgment for plaintiff, and defendant brings error. Affirmed.

B. C. King, Thomas P. Holt, and James E. Webb, for plaintiff in error.

M. D. Deck, for defendant in error.

Opinion by DUDLEY, C. This is an action in ejectment filed in the district court of Pontotoc county, Okla., by Archibald Holmes, defendant in error, as plaintiff, against the plaintiff in error, Andrew Zimmerman, as defendant.

The case was submitted to the court, a jury being waived by both parties. The court made findings of fact and conclusions of law, as follows:

"This is a suit brought by the plaintiff. Archibald Holmes, against the defendant, Andrew Zimmerman, in ejectment for the possession of certain lands described in the petition: W. ½ of N. E. ¼ of S. E. ¼, and W. ½ of S. E. ¼, and S. E. ¼ of S. E. ¼, and S. W. ¼ of section 33, township 5 north, range 4 east, situated in Pontotoc county, state of Oklahoma. It is admitted by the plaintiff and defendant that the lands in controversy were allotted to Lenie Jefferson during her lifetime; that Lenie Jefferson died March 3, 1907; that Lenie Jefferson was a full-blood Choctaw Indian and was enrolled as such. I find from the evidence that at the time of her death, Lenie Jefferson left surviving her two children. That the youngest, Philliston Holmes, died in about two weeks after the mother; that the other child, Mary Holmes, lived about a year after the death of her mother, and also died.

"It is contended by the plaintiff that he (Archibald Holmes) was the husband of Lenie Jefferson at the time of her death, and that he is the father of Philliston Holmes and Mary Holmes by the said Lenie Jefferson. The defendant denies that there was any legal marriage between the plaintiff, Archibald Holmes, and the deceased, Lenie Jefferson, and contends that Archibald Holmes had another wife prior to the time he took up with and lived with Lenie Jefferson, and that he was therefore never the husband of Lenie Jefferson. I find from the evidence that the plaintiff, Archibald Holmes, was the legal husband of the deceased allottee, Lenie Jefferson.

"The defendant further contends that as the plaintiff, Archibald Holmes, was not the husband of the said Lenie Jefferson, that upon the death of the said Mary Holmes, the last child of Lenie Jefferson, that the brothers of Lenie Jefferson became the owners of said lands. These brothers are Samuel Jefferson, and others, and the defendant claims title from these brothers, under a deed that was properly approved by the county judge of McCurtain county after the act of Congress approved May 27, 1908. The defendant further claims title to said lands upon a deed executed by Archibald Holmes, dated May 29, 1907. It is admitted that Archibald Holmes is a full-blood Indian, and that at the time he executed the deed the same was not approved by the Secretary of the Interior and has never been so approved."

### Findings of Law.

"I find that upon the death of Lenie Jefferson her husband, Archibald Holmes, became the owner of a life estate in said lands: that her two children, Philliston Holmes and Mary Holmes, inherited the fee to said lands: that upon the death of these children their father inherited the entire estate; that upon the death of Philliston Holmes, his sister, Mary Holmes, inherited his interest in the land; that Mary Holmes died after statehood; that under the laws of the state of Oklahoma her father, Archibald Holmes, inherited her interest in the lands; that he is now the owner of the entire interest in the lands unless the deed executed by him in 1907, conveyed his life estate to the party from whom the defendant claims.

"I find that under the acts of Congress of May 29, 1907, it was necessary for a full-blood Indian in conveying an interest in inherited lands to have the same approved by the Secretary of the Interior: that unless the same was so approved the deed would be void and of no effect. I therefore find that the deed executed by Archibald Holmes to W. H. Walcott and A. J. Marsh, from whom defendant claims, on May 29, 1907, not having been approved by the Secretary of the Interior, is void and of no effect. As the defendant does not claim to have any subsequent title from Archibald Holmes—that is, that he does not claim any deed from Archibald Holmes since the death of Mary Holmes—the only interest he could claim would be the life estate, and the said deed is void; and I find that he has no interest whatsoever.

"I therefore find in favor of the plaintiff and direct a judgment be entered accordingly."

—and rendered judgment for plaintiff, to reverse which judgment this proceeding in error was commenced.

There are only two questions necessary to be settled in order to determine this case: First, was Archibald Holmes the husband of Lenie Jefferson? Second, was it necessary for a deed to be approved by the Secretary of the Interior made by Archibald Holmes to the grantors of Andrew Zimmerman?

The testimony of a number of the witnesses is that Archibald Holmes and Lenie Jefferson had been living together for a number of years and held themselves out to the world as husband and wife, and that they had two children. Archibald Holmes testified that he was married to Lenie Jefferson about four years before her death, which would have made them married some time in the spring of 1903; that he had been married before, and that he and his former wife were divorced by the Choctaw courts before his marriage to Lenie Jefferson. Counsel for plaintiff in error urged that the testimony shows that if a divorce was granted, it was granted by the courts of the Choctaw Nation, and that in the year 1903, or at any time subsequent to October 1, 1898, the Choctaw courts were abolished and had no power to grant divorces. To this contention, we cannot agree. The law which is relied on by plaintiff in error as abolishing the courts of the Choctaw Nation is section 28 of the act of June 28, 1898 (30 U. S. Statutes at Large, p. 495). Section 29 of the same act provided for the submission to the Choctaw Nation for their ratification or rejection. what is commonly known as the "Atoka Agreement," and in said section 29, authorizing said agreement to be submitted to the voters of the Choctaw-Chickasaw Nations, it was provided:

"That the votes cast in both said tribes or nations shall be forthwith returned duly certified by the precinct officers to the national secretaries of said tribes or nations, and shall be presented by said * * * secretaries to a board of commissioners consisting of the principal chief and national secretary of the Choctaw Nation. the governor and national secretary of the Chickasaw Nation. and a member of the Commission to the Five Civilized Tribes. to be designated by the chairman of said commission; and said board shall meet without delay at Atoka. in the Indian Territory, and canvass and count said votes and make proclamation of the result; and if said agreement as amended be so ratified, the provisions of this act shall then only apply to said tribes where the same do not conflict with the provisions of said agreement."

And section 29 of the Atoka Agreement provides as follows:

"It is further agreed that the United States courts now existing, or that may hereafter be created, in the Indian Territory shall have exclusive jurisdiction of all controversies growing out of the titles, ownership, occupation, possession, or use of real estate, coal, and asphalt in the territory occupied by the Choctaw and Chickasaw Tribes; and of all persons charged with homicide, embezzlement, bribery, and embracery, breaches, or disturbances of the peace, and carrying weapons," covered by the territory of said tribe, that refers to the "citizenship of the person or persons charged with such crime; and any citizen or officer of the Choctaw or Chickasaw Nations charged with such crime shall be tried, and, if convicted, punished as though he were a citizen or officer of the United States, and section 1636 to 1644, inclusive, entitled 'Embezzlement,' and sections 1711 to 1718, inclusive, entitled 'Bribery and Embracery,' of Mansfield's Digest of the Laws of Arkansas, are hereby extended over and put in force" to cover the Choctaw and Chickasaw Nations, and where necessary when "the same appears in said laws shall include all officers of the Choctaw and Chickasaw governments."

And section 29 of said Atoka Agreement further provides.

"It is further agreed. in view of the modification of legislative authority and judicial jurisdiction herein provided, and the necessity of the continuance of the tribal government so modified. in order to carry out the requirements of this agreement, that the same shall continue for a period of eight years from the 4th day of March, 1898. This stipulation is made with the belief that the tribal governments so modified will prove so satisfactory that there will be no need or desire for further change until the lands now occupied by the Five Civilized Tribes shall, in the opinion of Congress, be prepared for admission as a state to the Union. But this provision shall not be construed to be in any respect an abdication by Congress of power at any time to make needful rules and regulations respecting said tribes."

The Atoka Agreement was ratified by the voters of the Choctaw and Chickasaw Nations on the 24th day of August, 1898. Therefore section 28 of the act of June 28, 1898. being in conflict with section 29 of the Atoka Agreement. never became the law. and the tribal courts continued by authority of the Atoka Agreement, with jurisdictions as modified by said agreement. until the passage of the act of April 28, 1904 (33 U. S. Statutes at Large. p. 573), which took away all the jurisdiction from the courts of the Choctaw and Chickasaw Nations.

It is admitted by plaintiff in error that the divorce which Archibald Holmes claimed

to have obtained from his wife, if granted at all, was granted in the year 1903, and at this time the Choctaw courts had not been abolished and had jurisdiction to grant divorces. In re Poff's Guardianship, 7 Ind. T. 59, 103 S. W. 765; Hayes v. Barringer, 168 Fed. 221, 93 C. C. A. 507. The rule in this state is settled that where a man and woman live together for a number of years and have children, even though the testimony shows that either of them had a living husband or wife, in the absence of proof to the contrary, the law will presume that there has been a divorce, and that the second marriage was legal.

Under the testimony in this case there is no error in the trial court's finding that Archibald Holmes and Lenie Jefferson were husband and wife at the time of Lenie Jefferson's death. This brings us to a consideration of the remaining question in this case. Was it necessary for the deed executed by Archibald Holmes to Marsh and Walcott, the grantors of the plaintiff in error (defendant in the court below), to be approved by the Secretary of the Interior in order to make it valid?

Section 22 of the act of Congress of April 26, 1906, (34 U. S. Statutes at Large, p. 137), provides as follows:

"That the adult heirs of any deceased Indian of either of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued for his or her share of the land of the tribe to which he or she belongs or belonged, may sell and convey the lands inherited from such decedent; and if there be both adult and minor heirs of such decedent, then such minors may join in a sale of such lands by a guardian duly appointed by the proper United States Court for the Indian Territory. And in case of the organization of a state or territory, then by a proper court of the county in which said minor or minors may reside, or in which said real estate is situated, upon an order of such court made upon petition filed by guardian. All conveyances made under this provision by heirs who are full-blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe."

On the death of Lenie Jefferson in 1907, she left surviving her two children and her husband, Archibald Holmes. At that time the laws for the state of Arkansas, as set forth in Mansfield's Digest, and the common law of England, as far as applicable, was in force in the Indian Territory. On the death of Lenie Jefferson her husband, Archibald Holmes, succeeded to the possession of her allotment for his life by curtesy, and the fee passed to her two children. After the adop-

tion of the Constitution of Arkansas of 1874, curtesy, as it existed at common law, was modified to the extent that curtesy initiate was abolished. See Neelly v. Lancaster, 47 Ark. 175, 1 S. W. 66, 58 Am. Rep. 752; Johnson v. Simpson, 40 Okla. 413, 139 Pac. 129. The husband took no interest in his wife's land during her lifetime, even when there was issue born alive and seisin by the wife. The Constitution of 1874 gave the wife full power to dispose of her real estate during her lifetime, as though she were a "feme sole," and it was not necessary for her husband to join in a deed. She could also make a will devising all her real estate away from her husband, so that at her death the husband would not have curtesy in the land of which she had been seised, and only in the case of intestacy, where there had been issue born alive, the husband succeeded to a life estate in his wife's land, known as curtesy. This is a freehold estate, and is in the nature of an estate by descent.

Webster's Unabridged Dictionary defines the word "heir" as:

"One who receives, inherits, or is entitled to succeed to the possession of any property after the death of its owner; one in whom the title of an estate vests on the death of the proprietor; one on whom the law bestows the title to property of another at the death of the latter."

The act of April 26, 1906, was passed by Congress for the purpose of protecting a class of people who, on account of the simplicity of their natures, and their unfamiliarity with business affairs, were deemed incapable of protecting themselves, and who, if left without any protecting legislation and without any supervision on the part of the representatives of the government or the courts, would be the easy prey of the mercenary schemer. There could be no reason why Congress would have intended to protect a full-blood Indian who might have inherited a fee-simple title to a twentieth or a fiftieth interest in an allotment, and require his deed to be approved in order to give it validity, and yet intend that a full-blood Indian who on the death of his wife succeeded to the possession of the entire allotment for his lifetime (oftentime being at an age when his expectancy would make his interest worth as much as half of an allotment) should have the right to convey this valuable estate to the first shrewd man who offered him any price which he would accept. It is well known that the average full-blood Indian, on account of his ignorance of business affairs, can often be induced to sign any paper on the payment of from $10 to $100.

At common law the husband was not the

heir of his wife, and should we follow the technical definition of the word, we would be forced to hold that the word "heirs," as used in the act of April 26, 1906, did not include the husband, but it has been held in construing wills that the word "heirs" should be construed according to who was meant by the testator, and as was said by the Supreme Court of Washington, in the case of D. R. Noble et al. v. City of Seattle, 19 Wash. 133, 52 Pac. 1013, 40 L. R. A. 822, wherein they hold that under the statute giving the right of action to the heirs of any person, if the death of such person be caused by the negligence of another, that the word "heirs," as used in that act, meant the widow and children.

"It is familiar law that interpretation may contract as well as expand the meaning of words used in a statute, when the harmony of the legal system so requires."

We believe it was the intention of Congress when this act was passed to require every interest which was succeeded to by any full-blood Indian on the death of an allottee to be approved by the Secretary of the Interior, in order to make it valid, and the word "heirs," as used in that act, was used in the sense of any full-blood Indian on whom the title of an allotment vested, or who succeeded to the possession of the same on the death of the allottee, and was not used in its technical sense. To hold otherwise would be contrary to the settled policy of the United States in legislating for the protection of the full-blood Indian.

On the death of the second child in 1908, which was after Oklahoma Territory and the Indian Territory had been admitted to statehood, Wilson's Revised and Annotated Statutes of the Territory of Oklahoma were in force, and under the law of descent and distribution, as set forth in said statutes, the father was the sole heir of said deceased child, and the deed, which the father had executed, conveying a life estate to Marsh and Walcott, never having been approved by the Secretary of the Interior, was void and of no effect, and said father, Archibald Holmes, was entitled to the possession of the land sued for.

We think that the findings of fact and conclusions of law of the trial judge were correct and, finding no error in the record, we recommend that the judgment of the trial court be affirmed.

By the Court: It is so ordered.