## BARNETT et al. v. PRAIRIE OIL & GAS CO. et al.*

Circuit Court of Appeals, Eighth Circuit.
April 18, 1927.

No. 7541.

1. Indians ⟨key⟩18—Descent of property of full-blood Creek dying intestate without issue in September, 1909, being governed by Oklahoma law, husband and father each took half (Rev. Laws Okl. 1910, § 8418).

Descent of property of full-blood Creek, who died intestate without issue in September, 1909, was governed by law of Oklahoma, under which half passed to surviving husband, and other half to father, in view of Rev. Laws Okl. 1910, § 8418.

2. Appeal and error ⟨key⟩1010(1)—Trial court's finding, supported by evidence, will not be disturbed.

Court's finding that Creek Indians, who were husband and wife, separated by mutual

*Rehearing denied July 12, 1927.

consent in accordance with requirements of Creek customs, will not be disturbed, if supported by evidence.

**3. Indians ⊜➙39—Creek ordinance, providing for divorce by district court, held not mandatory, so as to render divorce according to previous custom invalid.**

Noncompliance with Creek tribal ordinance of 1881, providing that divorce may be adjudged by district court, did not render divorce according to previous custom invalid, since such ordinance was not mandatory.

**4. Statutes ⊜➙227—In determining whether Creek ordinance, providing that divorce may be adjudged by district court, was mandatory, word "may" may be disregarded.**

In determining whether Creek tribal ordinance of 1881, providing that divorce may be adjudged by District Court, was mandatory, word "may" may be disregarded, since it may refer to granting or refusal of divorce, as dependent on showing made to court, rather than permissibility of prescribed procedure.

Appeal from the District Court of the United States for the Northern District of Oklahoma; Franklin E. Kennamer, Judge.

Suit by the Prairie Oil & Gas Company and others against Tucker Barnett and another. Decree for plaintiffs, and defendants appeal. Affirmed.

For opinion below, see 10 F.(2d) 804.

Lewis C. Lawson, of Holdenville, Okl., for appellants.

J. L. Hull, of Tulsa, Okl. (Paul B. Mason, A. A. Davidson, and T. J. Flannelly, all of Independence, Kan., and West, Gibson, Sherman, Davidson & Hull, of Tulsa, Okl., on the brief), for appellees Kunkle and Prairie Oil & Gas Co.

Before STONE and VAN VALKENBURGH, Circuit Judges, and TRIEBER, District Judge.

STONE, Circuit Judge. Annie Bird, a full-blood Creek, died intestate without issue in September, 1909, after receiving patent for her allotment of Creek lands. Her allotted lands were claimed by several persons of various degrees of kinship to her, among whom was her alleged husband, Jimmie Bird. This action involves the legality of the marriage of the allottee to Jimmie Bird, as controlling his right to share in such inheritance.

The case was here on a former appeal. Barnett v. Kunkle, 256 F. 644.

[1] At the time allottee died, the descent of her property was governed by the law of Oklahoma. Jefferson v. Fink, 247 U. S. 288, 38 S. Ct. 516, 62 L. Ed. 1117; Barnett v. Kunkle, 256 F. 644, this court. That Okla-homa statute (Rev. Laws of Oklahoma 1910, § 8418) provided that, where there was no surviving issue (as here), one-half of the estate passed to the surviving husband or wife and the other half to the surviving father or mother. Allottee left a father (Tucker Barnett) surviving, and Jimmie Bird, who claims to be her surviving husband. If Jimmie Bird was her lawful husband at the time of her death, he inherited one half and her father the other half of this land. Barnett v. Kunkle, 256 F. 644, 646, this court.

Therefore, the question is whether he was such husband. The evidence supports the finding of the trial court that Jimmie Bird and Annie were married, in accordance with the Creek custom, about 1897, and lived as and were recognized as husband and wife for 10 years or more before and to the time of her death; also, it is undisputed that, prior to this relation, he had been similarly married to and lived with one Betsy; also, that he and Betsy had separated about 1896, prior to his relation with Annie, and that, thereafter, Betsy had contracted a tribal marriage with one Josey Yarbola, with whom she thereafter lived publicly and was recognized as his wife.

[2] The appellants make two contentions here, both relating to the divorce of Jimmie Bird from Betsy. The first is that the evidence fails to show that those two separated by mutual consent, in accordance with the requirements of the Creek customs. This is a question of fact whereon the court found mutual consent and where such finding is supported by the evidence. Therefore, we hold that the requirements for a divorce in accordance with tribal customs were fully met.

[3] The second is that there was in force, since 1881, a Creek tribal ordinance governing divorce which was mandatory and exclusive and had not been complied with. There is no dispute as to the fact of such noncompliance. Therefore, the question is one of law and is whether the ordinance was mandatory and exclusive. If it was of that character, then divorces in accord with tribal custom were superseded and replaced thereby, were not valid thereafter and this particular divorce was ineffective as no divorce at all. If it was not of that character, but merely provided an additional method of divorce, the divorce by custom remained and this divorce was valid.

[4] The Creek ordinance of 1881 was as follows:

"That a divorce from the bonds of matrimony may be adjudged by the district court

of the district where the parties, or either of them, reside, on application, by petition or complaint, of the aggrieved party."

The wording of this ordinance is not mandatory—it reads that divorces "*may* be adjudged." This language may refer to the granting or refusal of the divorce as dependent upon the showing made to the court before which it is presented rather than to the permissibility of this prescribed statutory procedure. Therefore, this language may be disregarded in so far as the matter under examination is concerned. However, nowhere in the ordinance is there any expression which in the slightest degree tends to pronounce the ordinance as mandatory and exclusive. The sole basis of such contention must be that as the tribal council has prescribed a particular method of divorce, it must have intended such method to entirely supersede the existing methods. Whether the tribal council intended such drastic result must be sought in the situation intended to be affected by and in the natural result of such legislation. The people to be affected were tribal Indians living, in 1881, upon the reservation. Their relations toward each other were largely matters of long-established custom. These tribal customs might well be denominated as tribal common law. The marriage relation (both as to creation and termination) was governed by such customs. The tribal lands were held in common and comparatively few were possessed of much personal property. There is nothing in this record to show that these Indians had reached that stage of civilization where the devolution of property or ethical considerations would cause them to feel that the existing customs were so unsatisfactory that they should be done away with. So far as we are informed, this was the first ordinance enacted by the tribal council dealing with this character of matter. It would seem more reasonable to suppose that this ordinance was permissive only. Thus construed, it would afford an opportunity for such tribal citizens as desired to make public record of divorce to do so. The evidence of what was done thereafter harmonizes with such construction since it shows general disregard of this method of securing divorces and continued adherence to the customary method long used and familiar to the Indians.

If the case of Carney v. Chapman, 247 U. S. 102, 38 S. Ct. 449, 62 L. Ed. 1005 does not rule this action, it is strongly persuasive. In that case there was a Chickasaw ordinance concerning solemnization of marriages by a judge or ordained preacher of the gospel. Chickasaw Act of October 12, 1876. In considering the effect of that tribal act upon the validity of a marriage (according to tribal custom) which occurred in 1887, the court (page 104 [38 S. Ct. 449]) said:

"There was evidence also that it was customary to disregard solemnization before a judge or preacher. It would be going somewhat far to construe the Chickasaw statute as purporting to invalidate marriages not so solemnized."

We think the trial court rightly upheld the validity of this divorce and of the later marriage between Jimmie Bird and Annie.

The decree should be and is affirmed.

VAN VALKENBURGH, Circuit Judge. I concur in the conclusion reached in the foregoing opinion of Judge STONE. I think the decree should be affirmed for another reason. If Jimmie Bird were adjudged not to be the lawful husband of the allottee, Tucker Barnett, her father, was her sole heir. Barnett conveyed his entire interest to one Moore, through whom appellees' title is deraigned. In my judgment, the claim that the deed to Moore was procured by fraud, misrepresentation, or mistake, and that appellees are charged with knowledge thereof is not sustained by the record. Therefore, appellees' title is good in any view.

STONE, Circuit Judge, concurs herein.

