## MACHRANSKY v. MACHRANSKY.

Ohio Appeals, 8th Dist., Cuyahoga Co.

No. 8094. Decided Dec. 19, 1927.

Middleton, PJ., Mauck and Thomas, JJ., of the 4th Dist., sitting.

### First Publication of This Opinion.

### Syllabus by Editorial Staff.

413. DIVORCE & ALIMONY—256 Comity.

Validity of divorce is to be determined by law of country, that at that time, had jurisdiction over parties. Unless law of foreign domicile offends some positive law of this state, its action in divorcing its subjects or citizens cannot be questioned here.

### Error to Common Pleas.

### Judgment affirmed.

A. P. Gustafson and Louis Fernberg, Cleveland, for plaintiff in error.

A. H. Martin, Cleveland, for defendant in error.

### STATEMENT OF FACTS.

Israel Machransky, by his petition in the Common Pleas Court, alleged that he and Leah Belle Machransky were married in Russia about 1901, and that shortly thereafter they were divorced by what is pleaded to be an Hebrew Rabbinical GET; that after the divorce, plaintiff migrated to the United States, and that for many years the defendant has pursued him through various courts upon various charges connected with their former matrimonial relations.

Plaintiff further pleads that the defendant has been guilty of various acts which, if true, would constitute extreme cruelty, and prays that the court determine the effect of the GET to be an absolute divorce, or, in the alternative, that he be now divorced from the defendant.

Personal service was had upon the defendant, but she made default, except that she did file an application for temporary alimony which was never disposed of. The defendant not appearing, the trial court heard the case and granted all the relief that the plaintiff had prayed for, thus somewhat incongruously finding that the parties had been divorced in Russia some 20 years ago, and then proceeding to again divorce them.

The wife prosecuted error to this decree, the main contention in argument here being

(Continued on Page 316)

## PUBLISHER'S COLUMN

Entered as second class matter, February 28, 1928, at the Post Office, Cleveland, Ohio under the Act of March 3, 1879.

Issued Every Saturday          50 Weeks of the Year

### SUBSCRIPTION PRICES AND TERMS

Weekly Edition, One Year (50 issues) Payable in
  Advance ................................... $15.00
Discount for advance payment $3.00, making the
  net price ................................. 12.00
Including Quarterly Digest, to paid subscribers,
  no extra charge.
Including Binding of Weekly Parts at end of year,
  if paid in advance, net....................... 13.50
Including One Annual Digest, at end of year, and
  binding of weekly parts, paid in advance, net.. 16.00
Including Cinque Digest and Year's Subscription..$18.00
Single Numbers ............................... .35

Receiving Abstract after expiration date, considered as authorized continuation of subscription.

### THE LAW ABSTRACT COMPANY

Office, Editorial Rooms and Library, 13916 Euclid Ave.
Cleveland, O.

### STAFF

Sam H. Torrey.................... Circulation Manager
Jay F. Laning....................... Business Director
Sheldon R. Laning.................. Editorial Director

### LOOSE LEAF DIGESTING

Loose leaf Dictionaries have been successfully established and are highly praised by their users. Publishers of large Catalogs and Price Lists have used the plan continuously for years, and it has become established, for the many publications. There is no reason why the plan should not be applied to Digesting. Such a Digest can be made a great time, labor and money saver to the Bench and Bar. The Abstract publishers are now putting the system into its current Digesting, and will give it a trial. It has already started it, by the first sheets sent out with the Abstract recently. The first instalment of insert sheets will be issued comprising the next quarterly Digest, so that the first six months of 1928 digesting will be cumulated into one book, and an efficient binder supplied. We ask the careful consideration of subscribers, for this new plan of digesting. If it is deemed worthy, by them, extensive additions are contemplated, carrying it back at least to the Ternary Digest.

(Continued from Page 315)
that the case was irregularly tried in the absence of her attorney, and under such circumstances as to be so unfair as to require a reversal upon that ground.

It is argued that from this bill of exceptions it fairly appears that the plaintiff was not entitled either to equitable relief establishing the efficacy of the Russian divorce, or to a divorce under the statutes of this State.

MAUCK, J.

"The record shows that the parties were Jews, and we take judicial notice of the fact that they had very limited civil rights in Russia in 1901. The plaintiff testifies positively that he procured a Rabbinical divorce some time thereafter. The record further shows that the defendant had expressly admitted that they had been divorced.

The word GET among the Jews signifies a divorce. It is usually prepared by a scribe employed by the husband, signed by the latter and witnessed and delivered by the husband to the wife. Standard Dictionary. It announces in unequivocal terms that the parties are divorced and that the wife is at liberty to remarry. Under Jewish jurisprudence, the husband's right to divorce was absolute. The wife had the right to compel the husband to give her a divorce on certain grounds and in such case was entitled to the return of her dowry. Kadashin's Jewish Code of Jurisprudence;. 513 et seq. Nothing appears in the record of the law of Russia at the time in question, but the record does disclose these facts: Both parties were resident in Russia and were there married. Thereafter the husband divorced the wife and she received the return of her dowry of three hundred roubles. Thereafter, in Russia, the husband remarried, his second wife bore him a child and this family moved to America. It might be that the testimony establishing these facts was not the best testimony, but it was unobjected to and is sufficient to establish all that it purports to prove. The intimate relationship between the Jewish law and the church are well known. When, therefore, it was shown that the parties had a Rabbinical GET or divorce, we understand it to have been a divorce in accordance with Jewish law. The evidence at least does not show that this process of divorce violated any law of Russia, and the presumption is that it did not. Furthermore the record unequivocally shows the second marriage of the husband in Russia, and it must be assumed that such marriage was not unlawful.

While this system of divorce does not conform to present standards in this country, its validity is to be determined by the law of the country that at that time had jurisdiction over the parties. Each country establishes its own canons of marriage and divorce. In Ohio the power to divorce was at one time and elsewhere is now deemed to be a legislative function. In England it was for centuries and elsewhere still is in the exclusive jurisdiction of the church. Unless the law of the foreign domicile offends some positive law of this state, its action in divorcing its subjects or citizens cannot be questioned here. A striking illustration is found in the Massachusetts Reports.

In Turkey the law provided that a wife who is married to a Christian might, by renouncing Christianity and adopting the Mohammedan faith and marrying a Mohammedan be, by virtue of these facts alone, released from the obligations of her first marriage. That is to say no legal procedure is necessary at all; that the facts recited of their own vigor, worked a dissolution of the marriage relationship.

It was held by the Supreme Court of Massachusetts, in Kapigian v. Minassian, 212 Mass. 412, that the parties to that marriage relation, being domiciled in Turkey at the time, were, by virtue of the Turkish law, divorced in this summary method, and that the divorce was valid in Massachusetts.

There is no question that the plaintiff Machransky and the second woman to whom he was married have ever since lived as husband and wife and have raised their children as such. We must assume that when they entered upon the marriage relation in Russia that they did so pursuant to law; that they are now husband and wife and their children are legitimate.

Our conclusion is that the Common Pleas Court was right when it found that the parties here were divorced in Russia, and in so decreeing. The rest of the decree assuming to again divorce them was surplusage, but it is not harmful and need not be disturbed."

(Middleton, PJ., and Thomas, J, concur.)