## Henkel v. Henkel

*J. R. Smiley*, for libellant.
*Oscar B. Goldstein*, for respondent.

MORROW, J., April 1, 1947.—The petition or libel in this case sets forth, inter alia, as follows:

"2. Libellant and respondent were married on February 26, 1944, at Cumberland in the State of Maryland. . . .

"6. The present residence and post office address of respondent is 139 Cresson Drive, Massillion, Ohio. . . .

"8. Said respondent, in violation of his marriage vow and the laws of this Commonwealth did on Feb-

ruary 26, 1944, at Cumberland, Md., enter into a marriage contract with libellant herein and at the time of the said alleged marriage to libellant was then legally married to        Henkel from whom he had not obtained a divorce and at said time the said marriage was legally in existence. . . .

"9. Wherefore libellant prays for decree of annulment."

From what has been quoted of the libel, as well as from a reading thereof in its entirety, it is apparent that the libel, except its prayer for a decree *of annulment* instead of for a decree *in divorce a vinculo matrimonii*, was drafted under, and based upon clause (*b*) of paragraph 1 of section 10 of the Act of May 2, 1929, P. L. 1237, as amended by the Act of March 19, 1943, P. L. 21 (23 PS §10). That clause provides that it shall be lawful for the innocent and injured spouse to obtain a divorce from the bond of matrimony whenever the other spouse "(*b*) Has knowingly entered into a second marriage, in violation of the previous vows he or she made to the former spouse whose marriage is still subsisting . . .".

The law upon which a decree of annulment must be based is the Act of July 15, 1935, P. L. 1013 (23 PS §12) reading:

"In all cases where a supposed or alleged marriage shall have been contracted, which is absolutely void by reason of one of the parties thereto having a spouse living at the time of the supposed or alleged marriage, or, if, for any other lawful reason, the said supposed or alleged marriage was absolutely void when contracted, such supposed or alleged marriage, may, upon the application of either party, be declared null and void, in accord with the principles and forms hereinafter prescribed for cases of divorce from the bond of matrimony."

And the Act of June 10, 1935, P. L. 294, 23 PS §15, reads in part:

"Petitions or libels for the annulment of void or voidable marriages may be exhibited to the court of common pleas of the county where the marriage was contracted, or in the county where either the libellant or respondent resides, and, in such cases, residence of the libellant within the county or State, for any period shall not be required."

It thus appears that an annulment proceeding differs somewhat from an action in divorce. It may be brought in the county where the marriage was contracted, even though neither party resides there, and, when brought in the county where libellant or respondent resides, residence for any period shall not be required. And the law with respect to the validity of a contract of marriage is to be distinguished from that governing the status of marriage. See Phillips v. Gregg, 10 Watts 158, and Kapigian v. Der Minassian, 212 Mass. 412, 99 N. E. 264.

The hearing before the master was uncontested. The substance and effect of libellant's testimony is that respondent was living with a wife and one child at the time she was going with him; that he made application for a divorce in this court December 4, 1942; that instead of carrying through this proceeding he went to Ohio to secure a divorce, filed his application there November 29, 1943, secured a decree in divorce February 14, 1944, and married her February 26, 1944; that he had not had a domicile in Ohio for the time required; and that after she had been advised that this divorce decree was not legal she separated from respondent and filed the petition or libel before us. It does not appear that either party to the Ohio divorce proceeding has ever questioned the validity of the decree therein. Consideration is not now given to the merits of the present application.

The petition or libel, it appears, was not written so as clearly to bring it under the law pertaining to annulment of marriages. It does not state whether the

marriage was void or whether it was voidable. According to Bishop on Marriage, Divorce and Separation, vol. 1, sec. 259:

"A marriage is voidable when in its constitution there is an imperfection which can be inquired into only, during the lives of both of the parties, in a proceeding to obtain a sentence declaring it null. Until set aside, it is practically valid; when set aside, it is rendered void from the beginning."

In the preceding section a void marriage is thus defined:

"A marriage is termed void when it is good for no legal purpose, and its invalidity may be maintained in any proceeding, in any court, between any parties, whether in the lifetime or after the death of the supposed husband and wife, and whether the question arises directly or collaterally."

In the case of Commonwealth v. Smith, 7 D. & C. 658, it was held that a decree of divorce originally secured in another State through fraud may be vacated by the court entering it, although a marriage in Pennsylvania had since been contracted on the faith of the decree, but that the vacating decree could not have a retroactive effect so as to make the Pennsylvania marriage void ab initio. "Modern civilization condemns the harsh doctrine of ab initio sentences of nullity": 35 Am. Jur. 212, sec. 46.

The petition or libel makes no mention of the divorce action alleged to be invalid, and pleads in one paragraph a legal marriage and in the last paragraph asks that it be annulled. The pleadings should not be inaccurate or incomplete but rather exact and specific. Opportunity will be given to make them so.

### Order

And now, April 1, 1947, after consideration, it is ordered that the papers in this case be returned to the file in the prothonotary's office with leave to counsel

for libellant, if he so desires, to proceed to have the petition or libel amended in accordance with the law and rules of court, and then to take such further action herein as may be warranted.