**MARRIS v. SOCKEY.**

No. 3655.

United States Court of Appeals
Tenth Circuit.

Nov. 15, 1948.

Guy H. Sigler and H. A. Ledbetter, both of Ardmore, Okl. (P. M. Jackson, of Ardmore, Okl., on the brief), for appellant.

C. L. McArthur, of Ada, Okl. (Hobert G. Orton, of Ada, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

PHILLIPS, Chief Judge.

The United States brought this action in behalf of Ned Sockey, a restricted Mississippi Choctaw Indian of 13/16ths Indian blood, enrolled opposite Roll No. 1308, to cancel a warranty deed executed by Ned Sockey and his wife, on June 12, 1933, purporting to convey 110 acres of land to J. D. Hibdon, and to cancel certain instruments of record made by Hibdon and persons claiming through Hibdon, on the ground that such deed had not been approved by the Secretary of the Interior.

Forgy Marris, also known as Virgie Sockey, was a full-blood Mississippi Choctaw Indian, enrolled opposite Roll No. 1160. The land above referred to was allotted to her as a part of her distributive share of the lands of the Chochtaw and Chickasaw Nations, and was conveyed to her by an allotment deed. Forgy remained the owner of such land until her death on May 4, 1933.

Prior to 1900, George Marris married Forgy in Mississippi, in accordance with Choctaw Indian custom. In January, 1903, they removed from Mississippi to the Chickasaw Nation in Indian Territory. They separated in May, 1903, while residing in the Chickasaw Nation, and thereafter did not live together as husband and wife.

On March 16, 1904, Forgy, under the name of Virgie Sockey, married Rafe Sockey. The marriage was performed by a Baptist minister pursuant to a marriage license issued by the clerk of the United States Court of the Indian Territory. That marriage was dissolved by a decree of divorce entered by the district court of Carter County, Oklahoma, on November 13, 1908. In 1910, Forgy married Luther B. Berry, a white man. That marriage was dissolved by a decree of divorce entered by the district court of Garvin County on June 13, 1929. Forgy did not thereafter remarry.

On January 2, 1912, the county clerk of Carter County issued a marriage license to George and Lillie McCarty, and, on the same day, they were married by a Justice of the Peace, qualified to perform marriage ceremonies. Continuously since that date, they have lived together as husband and wife and four children have been born the issue of that marriage.

On July 10, 1933, Hibdon filed a petition in the county court of Garvin County for a determination of the heirs of Forgy. The petition alleged that Forgy and George were married about the year 1900, that they were legally divorced in 1902, and that no issue was born of such union.

Notice of the pendency of the petition for determination of heirship was given by publication. No personal service was made upon George, who was a resident of Carter County.

On August 31, 1933, a decree determining heirship was entered by the county court of Garvin County wherein it was adjudged that Forgy died unmarried and without issue and left as her sole and

only heir her nephew, Ned Sockey, the son of John Sockey, a deceased brother of Forgy.

George filed an answer in the instant case in which he alleged that he and Forgy were legally married in Mississippi prior to 1902; that they lived together as husband and wife in Carter County; that in 1905 or 1906, Forgy left George and moved to Love County, Oklahoma, and subsequently to Garvin County, where she lived until her death on May 4, 1933; that such marriage was never dissolved by divorce; and that George was the surviving husband and sole heir of Forgy, and the owner of the land allotted to Forgy.

Ned Sockey filed a petition in intervention in which he alleged that the marriage between George and Forgy was dissolved by divorce in 1903; that Forgy was single and unmarried at the time of her death; that she left no lineal descendants, and that he was her next of kin and sole surviving heir. He also set up the decree of heirship in the county court of Garvin County.

George has appealed from a decree adjudging, among other things, that Ned Sockey was the sole surviving heir of Forgy and quieting the title in Ned Sockey. The defendants below did not appeal.

■ The trial court found that Forgy and George were living within the boundaries of the Chickasaw Nation at the time they separated in 1903, and that at that time there existed in the Chickasaw Nation a tribal custom whereby married persons could effect a divorce by an agreement and permanent separation. That finding is supported by substantial evidence, is not clearly erroneous, and is binding on this court.

■ The trial court further found that at the time of the separation of George and Forgy in 1903 there existed a custom among the Choctaw Indians and within the Choctaw Nation whereby married persons could effect a divorce by an agreement and permanent separation. The evidence upon which that finding is based is not included in the record and we must assume that it supports the finding.

The trial court further found that the records in the United States Courts of Indian Territory prior to statehood and the records in the county and district courts of the State of Oklahoma, for the counties wherein Forgy and George were known to have resided, after statehood did not disclose a decree of divorce dissolving the marriage of Forgy and George.

■ The trial court further found that the evidence failed to establish that a divorce was not obtained either by Forgy or George in the tribal courts of the Chickasaw Nation prior to April 28, 1904.[1] That finding under the evidence, as we shall later undertake to show, is not clearly erroneous and is binding on this court.

The trial court concluded that the evidence did not overcome the presumption, flowing from the subsequent marriage of George to Lillie McCarty, that the prior marriage to Forgy had been lawfully dissolved.

Section 4 of the Chickasaw laws read as follows:

"Divorce from the bonds of matrimony shall not be granted, but in cases provided for by law, by suits in the District Court of this Nation."

We think there can be no doubt that there were recognized customs by the Choctaw Tribe of Indians and in the Chickasaw, Creek, and Seminole Nations which had the force of tribal common law, whereby marriage could be effected by mutual agreement followed by cohabitation, and divorce could be effected by mutual agreement and permanent separation.[2]

■ It is the general rule that statutes regulating marriage are directory mere-

[1] Tribal courts were abolished by the Act of April 28, 1904, 33 Stat. 573.

[2] See, Johnson v. Dunlap, 68 Okl. 216, 173 P. 359, 360; Sealey v. Smith, 81 Okl. 97, 197 P. 490, 494; James v. Adams, 56 Okl. 450, 155 P. 1121, 1122; Proctor v. Foster, 107 Okl. 95, 230 P. 753, 754; Coker v. Moore, 121 Okl. 219, 249 P. 694, 695; Cyr v. Walker, 29 Okl. 281, 116 P. 931, 934, 35 L.R.A.,N.S., 795; Kunkel v. Barnett, D.C.Okl., 10 F.2d 804, 805; Palmer v. Cully, 52 Okl. 454, 153 P. 154, 157, Ann.Cas.1918E, 375.

See, also, Buck v. Branson, 34 Okl. 807, 127 P. 436, 437, 50 L.R.A.,N.S., 876.

ly, and, in the absence of an express provision to the contrary, do not invalidate a common-law marriage.[3]

We think, by analogy, the Chickasaw law quoted above should be construed as directory merely and as not prohibiting divorce in accordance with tribal custom.

In Proctor v. Foster, 107 Okl. 95, 230 P. 753, 754, and Coker v. Moore, 121 Okl. 219, 249 P. 694, 695, the court held that a divorce in accordance with Creek custom was valid, notwithstanding the Creek laws provided for a divorce in Creek tribal courts. In Barnett v. Prairie Oil & Gas Co., 8 Cir., 19 F.2d 504, 505, the court held that a Creek tribal ordinance governing divorce was directory merely and did not render invalid a divorce according to Creek custom.

It is urged that the tribal customs with respect to marriage and divorce and the jurisdiction of the tribal courts to grant divorces were abolished by the Act of June 7, 1897, 30 Stat. 62, and the Curtis Act of June 28, 1898, 30 Stat. 495.

The Act of June 7, 1897, provided that on or after January 1, 1898, the United States Courts in the Indian Territory should have original and exclusive jurisdiction and authority to try and determine all civil cases in law and equity thereafter instituted, and all criminal cases for the punishment of any offense committed after January 1, 1898, and that the laws of the United States and the State of Arkansas in force in Indian Territory should apply to all persons therein, irrespective of race, but it further provided that the ratification of any subsequent treaty with any one of the Five Civilized Tribes would suspend any provision of such Act in conflict with the treaty.

Section 28 of the Curtis Act provided that on July 1, 1898, all tribal courts in Indian Territory should be abolished, but it contained a proviso that such section should not be in force as to the Chickasaw, Choctaw, and Creek Nations until October 1, 1898.

Section 29 of the Curtis Act ratified the agreement made by the Commission to the Five Civilized Tribes of Indians, known as the Atoka Agreement, and provided that such agreement should be in full force and effect if ratified by the Choctaw and Chickasaw Tribes on or before December 1, 1898. It further provided that if the Atoka Agreement should be so ratified, the provisions of the Curtis Act should then only apply to such Tribes "where the same do not conflict with the provisions" of such agreement. The Atoka Agreement was ratified by the Chickasaw and Choctaw Tribes on August 24, 1898, 30 Stat. 495.

Certain provisions of the Atoka Agreement authorized the continuance of the legislative bodies of the Choctaws and Chickasaws and recognized the force of their laws and the jurisdiction of their courts. It would seem, therefore, that the Atoka Agreement was in conflict with the provisions of the Act of June 7, 1897, and suspended the operations thereof with respect to the Choctaws and Chickasaws, and was in conflict with § 28 of the Curtis Act, and that § 28 never became effective as to the Choctaws and Chickasaws.[4]

It follows that it was not until the enactment of the Act of April 28, 1904, 33 Stat. 573, that the laws of Arkansas superseded the tribal customs of the Chickasaws and Choctaws.[5]

The power to grant a divorce is founded on domicile.[6] Whether a law-

3 Meister v. Moore, 96 U.S. 76, 80, 81, 24 L.Ed. 826; Reid v. Harkrader, 9 Cir., 264 F. 834, 835, 836; Vaughn v. Vaughn, 62 Cal.App.2d 260, 144 P.2d 658, 660; In re Sander's Estate, 67 Okl. 3, 168 P. 197, 199; Reaves v. Reaves, 15 Okl. 240, 82 P. 490, 495, 496, 2 L.R.A.,N.S., 353.

See, also, 35 Am.Jur., p. 202, § 33, Note 16, where cases to the same effect from many jurisdictions are collated.

4 Zimmerman v. Holmes, 59 Okl. 253, 159 P. 303, 305; In re Feland's Estate, 26 Okl. 448, 110 P. 736, 737; Mills, Oklahoma Indian Land Laws, 2d Ed., pp. 251, 252.

5 Palmer v. Cully, 52 Okl. 454, 153 P. 154, 157, Ann.Cas.1918E, 375.

6 Williams v. State of North Carolina, 325 U.S. 226, 229, 65 S.Ct. 1092, 89 L. Ed. 1577, 157 A.L.R. 1366.

ful divorce has been effected by an agreement therefor and permanent separation depends on the law of the place where the parties were domiciled at the time of such agreement and separation.[7]

It follows, we think, that tribal Indians who became domiciled within the territorial limits of an Indian nation in Indian Territory and there consummated a marriage or divorce in accordance with recognized tribal customs, before such customs had been superseded by other law, were bound by the legal effect given to such customs.

Accordingly, we conclude that George and Forgy were lawfully divorced by mutual agreement and permanent separation in accordance with the customs of both the Choctaw and the Chickasaw Tribes prior to 1904.

It enhances the morals and standards of the community and serves the ends of society if marriages are regarded as valid and the issue thereof as legitimate, and if the heirs of the parties thereto are made ascertainable with certainty.[8] Hence, if a marriage in fact has been established, it is presumed to be regular and valid and the burden of establishing its invalidity rests on the party who attacks it. It will be presumed in favor of a subsequent marriage that at the time thereof, the previous marriage had been dissolved.[9]

Here, there was a strong presumption that the marriage of George and Forgy had been dissolved at the time George married Lillie McCarty. The only evidence introduced by George to show that he and Forgy had not been divorced by the Chickasaw tribal court prior to April 28, 1904, was his own testimony that he had not obtained a divorce and had not been served with process in a divorce proceeding brought by Forgy. George, having married McCarty, and having brought children into the world, the issue of that marriage, we do not think his evidence overcame the strong presumption that his marriage with Forgy had been dissolved. In such circumstances, a parent should not be permitted to establish the illegitimacy of his own children except by clear, cogent, and satisfactory evidence.[10]

We deem it unnecessary to determine whether the decree of distribution in the county court of Garvin County was binding on George.

Affirmed.

---

[7] Bergeron v. Bergeron, 287 Mass. 524, 192 N.E. 86, 89; Kapigian v. Der Minassian, 212 Mass. 412, 99 N.E. 264, 265, Ann.Cas.1913D, 535; Johnson v. Johnson's Administrator, 30 Mo. 72, 84–90, 77 Am.Dec. 598; La Framboise v. Day, 136 Minn. 239, 161 N.W. 529, 531, L.R.A. 1917D, 571.

[8] Matthews v. Jones, 5 Cir., 149 F.2d 893, 894; Coachman v. Sims, 36 Okl. 536, 129 P. 845, 847.

[9] Matthews v. Jones, 5 Cir., 149 F.2d 893, 894; Sanders v. Sanders, 52 Ariz. 156, 79 P.2d 523, 529; Copeland v. Copeland, 73 Okl. 252, 175 P. 764, 765; Templeton v. Jones, 127 Okl. 1, 259 P. 543, 544; James v. Adams, 56 Okl. 450, 155 P. 1121, 1122, 1123; In re Tormey's Estate, 44 Idaho 299, 256 P. 535, 536, 537.

[10] In re Tormey's Estate, 44 Idaho 299, 256 P. 535, 537.