(5 Misc. Rep. 495.)

## LESHINSKY v. LESHINSKY.

(Superior Court of New York City, Equity Term. October, 1893.)

RABBINICAL DIVORCE—VALIDITY—COMITY.

A divorce granted by a rabbi of the Hebrew Church in Russia, where the marriage was contracted and where the parties then resided, in accordance with the Russian law, which authorizes the several churches other than the established church (Greek Catholic) to grant divorces to their members, is valid in New York.

Action by Samuel Leshinsky against Rose Leshinsky for a divorce on the ground of the nullity of the marriage. Judgment for defendant.

N. S. Levy, for plaintiff.
M. Stiefel, for defendant.

McADAM, J. The parties intermarried at Chicago in September, 1892. The plaintiff now seeks to annul the marriage on the ground that the defendant had at the time a husband by a prior marriage. The first marriage was celebrated before a rabbi at Sokolka, in Russia, the parties thereto being Israelites. They disagreed, and, according to prevailing custom, went before the rabbi of the place where they were domiciled, and were by him divorced, he giving to each of the parties what is there called a "gett." The defendant afterwards came to this country, and settled in Chicago. She

there formed the acquaintance of the plaintiff, and, after a court-ship of five days, the two concluded to intermarry. They went to a rabbi, and made known their desire. She explained her marital status, which proved satisfactory, whereupon the rabbi drew up a marriage certificate, called in Hebrew a "kthuba," in which it is recited that the defendant is "mitrachta," meaning a divorced wo-man. This was read to the plaintiff, who is also an Israelite, and the "gett" received in Russia was thereupon surrendered to the Chicago rabbi, who immediately thereafter made the plaintiff and defendant husband and wife. The plaintiff now disputes the legal-ity of the marriage. Its legal effect depends upon whether the di-vorce or "gett" given by the rabbi in Russia effectually dissolved the first marriage, and this must be determined according to the laws of the place where the decree was rendered.

The evidence proves that the state religion of Russia is Greek Catholic, which church does not recognize divorce, considering marriage as a sacrament; that the government, in consequence, has delegated to other confessions of faith the power to grant absolute divorces to members of their church, which, under the laws of Russia, are valid and effectual for all purposes. Being valid there, they are valid everywhere. 7 Lawson, Rights, Rem. & Pr. § 3726. The rule is that a divorce regularly obtained, according to the laws of the country where the marriage is celebrated, and where the parties are domiciled, (both ingredients concurring,) will be held a complete dissolution of the marriage contract in every other country, (Story, Confl. Law, § 201;) and this, whether the ground for divorce be one recognized as such in this state or not. The act of the rabbi in Russia was practically that of an ecclesiastical court recognized by the Russian government, and vested by it with the power of grant-ing divorces to members of the faith domiciled there. The parties appeared before the rabbi, who heard and determined their differ-ences, and by force of his decree, in the form of a "gett," both were discharged from their marital obligations. Either became at liberty to marry again, as though single, and a marriage thereafter, con-tracted on the faith of the rabbinical divorce, would have been binding, if performed at their native town. Having been effectual-ly divorced according to the laws of Russia, before leaving that country, the defendant left no husband behind when she came to America, and was as free to contract marriage here as in the country she left. This would seem to follow as a necessary se-quence upon logical grounds, legal principles, and the comity of nations. There is nothing in the mode of divorce repugnant to our institutions, or detrimental to society. On the contrary, such matters must be considered fully as safe in the hands of the church to which the parties belong as in any judicial branch of the govern-ment. True, a rabbinical divorce granted here would not be recog-nized as valid. Pen. Code, § 376, as amended in 1893. Neither would an absolute divorce be granted in this state for incompati-bility, abandonment, and like causes, which furnish sufficient grounds therefor in many states of the Union. The foreign rabbini-cal divorce is recognized upon grounds of comity or international

law, (3 Amer. & Eng. Enc. Law, 503,) while the divorce granted in the foreign state for causes not allowable here is recognized, not only on the ground of comity, but more particularly on that provision of the federal constitution which declares that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state, (Const. U. S. art. 4, § 1.) It follows that the defendant, at the time of her marriage to the plaintiff, did not have another husband; that the plaintiff knowingly married what the certificate calls a "mitrachta," or divorced woman; and that he has no legal cause of complaint. The defendant is therefore entitled to judgment.