SARAH KANTOR, Appellant, v. JOSEF COHN, Respondent, Impleaded with ISSY GOLDBERG and JOHN RAINEY, Defendants.

Second Department, January 25, 1918.

**Dower — when widow estopped as against bona fide purchasers — rabbinical divorce — rights of grantees of bona fide purchasers.**

Where a wife, as complainant, procures a rabbinical divorce, acquiesces in the remarriage of her husband, and is herself subsequently remarried and lives with her second husband for twenty-three years, she is estopped from claiming dower in the lands of her first husband which had been conveyed by him to *bona fide* purchasers by deeds in which his second wife joined, releasing her dower.

Grantees of such *bona fide* purchasers have all the rights of the original grantees from the plaintiff's divorced husband, and need not show their personal reliance upon his apparent marital status.

APPEAL by the plaintiff, Sarah Kantor, from a judgment of the Supreme Court in favor of the respondent, entered in the office of the clerk of the county of Kings on the 19th day of April, 1917, dismissing the complaint on the merits upon the decision of the court after a special verdict had been rendered by direction of the court.

The action was brought to recover dower in land on Vermont street, borough of Brooklyn, formerly owned by plaintiff's first husband, Solomon Rubin, who died in Connecticut on August 28, 1911. Plaintiff and Rubin originally lived in Russia, where they were married according to Jewish forms before a rabbi, in the year 1879. They lived together in Russia seven years, having three children; then Rubin came to this country in 1886. In 1889 he sent for his family, who came out and rejoined him. They lived together in Orange county and afterwards in Kings county.

About 1893 plaintiff separated from Rubin by means of a Jewish divorce. First she received a paper from a man named Burger, which he called a divorce. Then by ancient rabbinical custom she and Rubin appeared together before a rabbi, who first told plaintiff that this was not by her fault. He inquired of her whether, if Rubin should change his character, she would again live with him. She said it was impossible, that she could not stand it any longer. Thereupon the rabbi gave plaintiff the " get," or divorce, written in Hebrew, which she took. In three months Rubin went through a rabbinical marriage ceremony with a woman named Lena, and a few months later plaintiff in like manner married a man named Kantor, and went with him to Kansas City, where they lived as man and wife for twenty-three years.

In the meantime Rubin purchased and conveyed real estate. The property described in the complaint was one of several lots, the title to which Rubin had held for three days in April, 1904. In conveying this land his *de facto* wife, Lena, had joined in the deed and purported to relinquish all rights of dower. Defendant's predecessors in title took such conveyance in good faith. After Rubin's death plaintiff brought this suit for dower. She joined as defendants certain persons having rights as occupants in the land. The learned court dismissed the complaint, holding that plaintiff had

estopped herself from claiming such right of dower (*Kantor v. Cohn*, 98 Misc. Rep. 355), from which plaintiff appealed.

*Isidor J. Kresel*, for the appellant.

*Emanuel Tacker* [*Samuel Kahan* with him on the brief], for the respondent.

*Lynn C. Norris*, filed a brief as *amicus curiæ*.

PUTNAM, J.:

The man Rubin and his wife, coming in middle life to this country, naturally kept to the habits and ceremonies sanctioned by rabbinical authority. (See, *Matter of Spondre*, 98 Misc. Rep. 524.) The power to give a "get," or bill of divorce, though surrounded with forms to prevent hasty or capricious separations, was regarded as a matter of religious observance. Jewish writers required that the rabbi should be satisfied that there were sufficient grounds. He must, however, first seek to reconcile the parties. The rabbi's efforts for conciliation having been met by her refusal, he delivered to her the "get," which upon her marriage she gave to Kantor as a credential attesting her freedom to remarry. Such a "get" closes with the solemn words, in Hebrew:

"And this shall be unto thee, from me, a bill of divorce, a letter of freedom, and a document of dismission, according to the law of Moses and Israel." (Mielziner Jewish Law of Divorce, 129; Amram Jewish Law of Divorce, 158.)

By Hebrew law, the woman thus freed by divorce could not marry for three months thereafter. (Amram Jewish Law of Divorce, 108.) In 1791, Lord KENYON received testimony of a Jewess (without producing any document) proving a divorce *more judaico* in Leghorn, and thus established the validity of her own divorce. (*Ganer* v. *Lady Lanesborough*, Peake N. P. 17.)

Plaintiff's reliance on this divorce appears from her remarriage and subsequent married life with Kantor, by whom she had two children, aged at the time of the trial respectively twenty and seventeen years. Nevertheless, on the death of Rubin in Connecticut, plaintiff though still living with Kantor as his wife, took proceedings in the Connecticut Probate Court to have the administrator of Rubin's estate removed

and letters issued to her as the lawful widow. This was denied, because of the Connecticut statute as to the effect of an abandonment by either husband or wife if continued until the other's death. (*Kantor* v. *Bloom*, 90 Conn. 210.)

We agree with the learned trial court that plaintiff is now estopped to assert dower claims in the lands that are the subject of her action. Such estoppel is upon the combined grounds (a) the rabbinical divorce, wherein she was the complainant; (b) her knowledge of Rubin's remarriage with her acquiescence; (c) her own remarriage, followed by twenty-three years consortium with Kantor.

Silence may amount to negligence to the injury of another, if there be a duty to speak. Plaintiff herself asserted and obtained her marital freedom according to Jewish custom. By that means she entered into consortium with Kantor. Since Rubin's death has removed the impediment, that relation may eventually give her a legal status as Kantor's widow. She cannot in fairness now make the inconsistent claim of dower as widow of Rubin; still more is she estopped as to *bona fide* purchasers, who took lands from Rubin, relying on the release of dower given by plaintiff's successor as Rubin's wife. (*De France* v. *Johnson*, 26 Fed. Rep. 891; *Wright Lumber Co.* v. *McCord*, 145 Wis. 93; *Wilson* v. *Craig*, 175 Mo. 362; *Richardson's Estate*, 132 Penn. St. 292; *Gilbert* v. *Reynolds*, 51 Ill. 513; *Hilton* v. *Sloan*, 37 Utah, 359.)

Even where a wife in Massachusetts took by default a decree of divorce without jurisdiction having been acquired over the defendant, such voidable decree estopped her from claiming dower rights in New York. (*Starbuck* v. *Starbuck*, 173 N. Y. 503.) True, this plaintiff made no personal representations by speech or writing. But the solemn acts performed under the sanction of Jewish communal usage, followed by a daily conduct consistent with such renunciation for twenty-three years, debar this divorcee from now undoing her renunciation of her husband, and casting dishonor on her later family, and clouding the parentage of innocent children.

Her dower claims, now sought to be revived, might work damage to innocent purchasers in good faith who bought in reliance upon Rubin's deed joined in by the wife Lena. Rubin held her out, so that she was recognized as a lawful wife.

In view of Jewish custom, plaintiff may be deemed to have contemplated that very situation. The " get " meant freedom to Rubin as well as to herself. It is more than mere silence and acquiescence. As one is deemed to intend the natural consequence of his acts, plaintiff is to be regarded as acting with an intent and purpose to let Rubin remarry, and thereby to mislead strangers to whom he might sell land. Hence, after such sales, she cannot rightly assert a dower right thus concealed, as against *bona fide* purchasers misled, as she must have expected they would be misled, because of her conduct. And defendant stands in the shoes of the original grantees from Rubin, and need not show his personal reliance upon Rubin's apparent marital status. (*Wood* v. *Chapin*, 13 N. Y. 509; *Lacustrine Fertilizer Co.* v. *L. G. & Fer. Co.*, 82 id. 476, 483.)

The judgment dismissing the complaint on the merits should, therefore, be affirmed, with costs.

Jenks, P. J., Thomas, Blackmar and Kelly, JJ., concurred.

Judgment dismissing complaint on the merits affirmed, with costs.

---

The People of the State of New York ex rel. Philip Teitelbaum, Appellant, *v.* William F. Ryan, Acting Detective Sergeant, Police Officer, City of New York, Respondent.

Second Department, January 25, 1918.

Crime — extradition — habeas corpus — traverse of return — evidence — burden of proof — competency of evidence as to former conviction.

Upon a petition by a person charged with being a fugitive from justice for a writ of habeas corpus, the identity of the name of such person with the name of the person named in the rendition warrant raises a presumption that the persons are the same.

A traverse of the return to such a petition raises an issue of fact to be determined by the court as to the preponderance of the evidence with the burden upon the relator.

Evidence examined, and *held*, insufficient to overcome the presumptive *prima facie* case made out by the rendition warrant that the relator was the fugitive from justice sought.