In the Matter of  the Estate of RUBIN RUBENSTEIN, Deceased.

Surrogate's Court, Westchester County, June 7, 1932.

*Charles Recht*, for the petitioner.

*David Gorfinkel*, for the administratrix.

Slater, S. The petitioner, a former wife, residing in Poland, seeks to revoke the letters of administration issued to Bertha Rubenstein, the widow of the decedent.

The petition of Bertha Rubenstein, filed September 25, 1931, states she is the widow of Rubin Rubenstein, residing at No. 291 Riverdale avenue in the city of Yonkers, and that he died on the 16th day of September, 1931, while on a visit to the city of Warsaw in the republic of Poland, and left petitioner, his wife, and six children born of the body of the petitioner, and one son residing in Warsaw, Poland, a child of the former wife, the petitioner in the instant proceeding.

Upon the trial it was contended by the respondent widow, residing in Yonkers, (1) that the petitioner herein and the decedent had been lawfully divorced in Warsaw in the year 1897; (2) that the petitioner herein had knowledge that the decedent had remarried in America; and (3) that, with the intention of relying upon said divorce, the petitioner herein had remarried, or at least had lived with another man in the relationship of husband and wife.

The court will decide the issue presented herein in favor of the duly appointed administratrix upon the ground that the rabbinical divorce in 1897 was legal.

There was offered in evidence, with a translation from Polish and Russian languages into English, a certificate from the records of the synagogical district of Sobieneie-Yeziory for the year 1889, which shows that there was a marriage performed on December 19, 1889, between the decedent and one Chinka Laia Rubin.

There was also offered in evidence a certificate according to the entry in the official book of religious divorces of the rabinat of Warsaw in the year 1897, certifying that, on the twenty-ninth day of May (the old) in the chancery office of the Warsaw rabinat, with consent of both parties, a religious act of dissolving the " religious marriage of matrimony contracted in Warsaw the 5th day of May, 1889," between the decedent and Chinka Laya Rubenstein. The certificate also states that the act of divorce had been executed by a rabbi of the first district. The authenticity of the certificate is certified by the officials of Poland, the executive office of the Jewish rabinat at Warsaw and the American Consul.

There was also offered in evidence a translation of letters in Yiddish written by the son Abraham, residing in Warsaw, addressed to an aunt and uncle, as well as a letter addressed to the adminis-

tratrix and her children. These letters speak of the rabbinical divorce and evidence the fact that the " son and the first wife in the old country knew about the divorce and had full knowledge of the decedent's remarriage and birth of children and his family life in America.

On the trial it was contended by the petitioner herein that the rabbinical divorce hereinabove referred to was not final, nor legal, under the laws of Russia or the then kingdom of Poland.

All foreign law must be proved as a fact. (*Matter of Klyszewski*, 140 Misc. 241, 244, and cases cited.) The laws of Russia were received in evidence and were proved as a fact; and they were translated into the record.

A divorce regularly obtained according to the laws of the country where the marriage is celebrated and where the parties are domiciled will be held a complete dissolution of the marriage contract in every other country, provided the divorce is obtained pursuant to the law of the state wherein the parties resided.

The question presented here is whether the divorce or " gett " given by the rabbi in Poland effectually dissolved the first marriage. The regularity of the proceedings is determined by the law of Poland. But the petitioner herein contends that the rabbinical divorce in Poland was not final, but *must* be reviewed by the civil courts.

The Jews in Poland have been living since the reign of Sigismund I, 1541, under their own social autonomy. The Jewish community constituted not only a national and cultural, but also a civil, entity. It formed a Jewish city within a Christian city, with its separate forms of life, its own religious, administrative, judicial and charitable institutions. The Kings of Poland were the official guardians of the Jews. The Magna Charta of Jewish autonomy may be said to be represented by the charter of Sigismund Augustus in 1551, which embodies the fundamental principles of self-government for the Jewish communities of Great Poland. According to this charter, the Jews are entitled to elect, by general agreement, their own rabbis and " lawful judges " to take charge of their spiritual and social affairs. The rabbis and judges elected in this manner are authorized to expound all questions of the religious ritual, to perform marriages,. and grant divorces, to execute the transfer of property, and other acts of a civil character, and to settle disputes between Jews in accordance with the Mosaic law and the supplementary Jewish legislation. (History of the Jews in Russia and Poland by Dubnow, vol. 1, p. 103.)

The law of the Russian empire extended over every portion of the empire, unless modified by laws affecting kingdoms or provinces of the empire.

Three Russian lawyers, translators of the Russian code into English, were presented to the court and offered their opinions and testified that there came into being after Napoleon's visit to Poland in 1812 a law sometimes referred to as the Code Napoleon, known as the Civil Code of districts of the kingdom of Poland, being section V of the Marriage Law, concerning the marriages between parties not belonging to religions mentioned in the preceding sections. Section 187, relating to marriages, is as follows: "Section 187. After the marriage performance between Hebrews and Mohammedans, the rabbis, mullahs or other religious representatives who have performed the marriage, must appear together with the newly-weds and witnesses before the Clerk appointed to keep the Civil Records, who, by virtue of testimony of those who appear, makes an entry in the Civil Book, as a newly performed marriage, which conforms to Section 58."

Section 189, relating to divorces, is as follows:

"Section 189. In deciding the legality of a marriage between parties of the religions abovementioned, the rules of such faith to which the complaining party belongs are considered as a foundation. The divorce may follow only in such cases by these faiths permitted, at the request of the couple. The divorce matters of those persons are subject to examination by the Civil Courts. Such review is made behind closed doors and the attorneys for either side are not permitted to appear."

The expert offered by the petitioner translated section 189 as reading that "The divorce matters of those persons must be reviewed by civil courts." The two experts offered by the administratrix translated this sentence as reading as follows: "The divorce matters of those persons are *subject to examination by the civil courts.*" One of the experts testified that the Russian word "must" was not used in this section. All the experts referred to a decision of the Supreme Court of the Russian Empire, No. 127, 1883, which is found in the code offered in evidence and, in this decision by the court, it speaks of the right of the civil court only to *review.*

Applying the test of the decision and the right of social autonomy emanating in 1515 and the translations of the two distinguished scholars, the court finds that section 189 does not require a rabbinical divorce, to be effective and legal, to be reviewed by the civil courts. Such review only is had where there has been a dispute and one of the other parties seeks a review.

It is my opinion that the rabbinical divorce required in this case is legal, binding and effective under the laws of the kingdom of Poland, and that the marital relation was legally dissolved. (*Leshin-*

*sky* v. *Leshinsky,* 5 Misc. 495; *Miller* v. *Miller,* 70 id. 368; *Saperstone* v. *Saperstone,* 73 id. 631.) In *Matter of Spondre* (98 Misc. 524) there is a very instructive and illuminating opinion by former Surrogate FOWLER of New York county upon the question of rabbinical divorces. (See *Sorenson* v. *Sorenson,* 122 Misc. 196; *Kantor* v. *Cohn,* 181 App. Div. 400.)

Having decided that the rabbinical divorce was legal, it is unnecessary to proceed further with regard to the other two defenses, one of which relates to knowledge of the second marriage by the petitioner herein, in fact, her acceptance of it (See *Matter of Crook,* 140 Misc. 721); and the other relates to the ceremonial marriage of the decedent to the administratrix, their living together as man and wife for many years, and the birth of children, to which facts is applied the law that the presumption of legitimacy is stronger than the presumption of continuity of the first marriage. (*Matter of Meehan,* 150 App. Div. 681.)

The prayer of the petitioner is denied and the proceeding dismissed. Submit order of denial.