In the Matter of the Estate of MAX GOLDMAN, Deceased.

Surrogate's Court, Kings County, October 9, 1935.

*Louis Bernstein*, for the petitioner, Ruth Goldman.

*Feit & Feit* [*Charles Feit* of counsel], for Morris Goldman, objector.

*Duncan & Bruchhausen*, for the objectors.

WINGATE, S. The facts in this contested application for letters of administration are not in dispute and present a question of conflict of laws which possesses certain features of novelty respecting the validity of a " get " or Jewish rabbinical divorce.

In 1903, in Kiev, Russia, Abraham Klein married one Ruth Mintza, who is one of the present applicants for letters. This marriage was solemnized by a rabbi. Four children were born of this marriage. The parties lived together in Russia until 1913, when Klein left his wife and children and emigrated to this country, taking up his residence in this city, where he has continuously resided since his arrival. He was later admitted to United States citizenship.

In or about the year 1924 he went to a rabbi, who, with the assistance of two other rabbis, made out and gave to him a certificate in Hebrew, the translation of which reads as follows: " This is to certify that Abraham Klein divorced his wife, Rachel Mintza, according to the Jewish law. Mr. Klein is permitted to re-marry provided that he receives the permission of the United States Government.

     " RABBI ABRAHAM AARON YUDILOVITCH
     " RABBI ELIAZAT LIPER WEISBLOOM
     " RABBI ISAAC SODDEN."

Klein's wife had no notice of his application for a divorce, and the only information of its granting which she received arose from the fact that a certificate thereof was subsequently delivered to her in Russia where she still resided.

No other proceeding looking to the divorce of the parties was ever had.

In or about the year 1926, Ruth came to this country, and in or about 1931 commenced a relationship with the decedent which was sufficient to constitute a common-law marriage if she was free to marry. There was also some evidence that, at about the same time, some sort of a ceremony was performed between them, but the court is not satisfied from the evidence that it amounted to the solemnization of a marriage.

Ruth has now applied for letters of administration upon the estate of the deceased on the allegation that she is his widow. This is opposed by his children by a former marriage, who contest her status.

One of the rabbis who granted the " divorce " testified in substance that twenty-one years ago, when he left Russia, the local law provided that, in matters of divorce, Jews were governed by Jewish law. . All of the parties in question were Orthodox Jews.

While this proof of the law of the domicile of the wife of Klein at the time the alleged divorce was granted leaves much to be desired, the inference of continuance of a condition would probably be sufficient to indicate that in 1924 the procedure adopted would under such law have effected a dissolution of the marriage. (*Matter of Kotlik*, 152 Misc. 802, 804, and authorities cited.) The question of its effect upon the status of the parties in the present case, therefore, depends upon whether the law of Russia could in 1924 have the extraterritorial effect of altering the status of a domiciled resident of this city.

On primary principles, the answer to this query is an obvious and emphatic negative.

Section 9 of article 1 of the Constitution of the State of New York provides in part: " nor shall any divorce be granted otherwise than by due judicial proceedings."

The term " judicial proceeding " implies a " proceeding before a competent court or magistrate in the due course of law or the administration of justice, which is to result in any determination of action of such court or officer." (*Newfield* v. *Copperman,* 47 How. Pr. 87, 89.) In any such proceeding " there must be parties, and opportunity to be heard, and the tribunal must proceed either to a determination of facts upon evidence or of law upon proved or conceded facts." (*Matter of Mitchell* v. *Cropsey,* 177 App. Div. 663, 667, 668.)

Whatever may be said respecting the action of Klein and the rabbis, it obviously lacked every element of a " judicial proceeding." Since the effect of any act must be determined by the law of the place where such act is performed (*Matter of Killough*, 148 Misc. 73, 80; *Matter of Cohen*, 149 id. 765, 768, 769), and the transactions purporting to grant the divorce were performed in the State of New York whose fundamental law provides that no divorce shall be granted other than by due judicial proceedings, it follows that the purported divorce was a nullity and wholly ineffectual to dissolve the marriage between the parties. (*Chertok* v. *Chertok*, 208 App. Div. 161, 162; *Matter of Spiegel*, 24 F. [2d] 605.)

As is pointed out by that pre-eminent authority on Conflict of Laws, Professor Beale of Harvard, in his monumental treatise on the subject (1935 ed. § 135.1): " The granting of a divorce is not the punishment of an offence nor the setting aside by judicial process of a contract for a cause or condition in the contract. It is nothing but the regulation by the domiciliary state of the domestic affairs of its domiciliaries, and a state of domicile is alone concerned, therefore, in the granting or refusing to grant a divorce. In other words, where a divorce is granted as it can only be granted at the domicile of a party, the cause for divorce and all the qualifications surrounding the granting of a divorce are to be determined in accordance with the law of the forum."

Counsel for the alleged widow wholly misapprehends the effect of that portion of the determination of *Haddock* v. *Haddock* (201 U. S. 562), upon which he relies. The holding in that case was that a spouse could not by his own wrongful act change the matrimonial domicile so as to confer jurisdiction upon the courts of another State to grant a divorce. This authority would be presently in point if Klein, after absconding to New York, had obtained a divorce valid according to New York laws and the alleged widow were contesting its validity on the ground of lack of jurisdiction of our courts in the premises. Such is, however, far from the present contention, and this authority is, therefore, not in any wise relevant to the discussion.

Similarly, *Matter of Rubenstein* (143 Misc. 917); *Leshinsky* v. *Leshinsky* (5 id. 495); *Miller* v. *Miller* (70 id. 368), and *Matter of Spondre* (98 id. 524) are nowise in point. In each of these cases the divorce was granted abroad, by an authority duly authorized by local law at a time when the parties were there domiciled. One or both later came to this country and it was held that the change of status which had been duly and validly accomplished abroad according to the respective laws, would be recognized here. The cases are merely illustrations of the rule noted by this court in

*Matter of Bennett* (135 Misc. 486, 494), that "where the status of an individual has been validly fixed prior to his coming into this State, our courts will recognize it. (*Hubbard* v. *Hubbard*, 228 N. Y. 81, 85; *Ball* v. *Cross*, 231 id. 329, 331; *Dodge* v. *Campbell*, 128 Misc. 778, 780.)"

*Kantor* v. *Cohn* (181 App. Div. 400) was expressly and professedly decided on principles of estoppel which have no conceivable application to the facts shown by the present record.

Final reliance is placed on the supposed presumption of the validity of the marriage of the alleged widow to the decedent. A presumption is merely an inference of fact of more or less potency, which is sometimes indulged in in the absence of evidence. (*Matter of Callahan*, 142 Misc. 28, 36; affd., 236 App. Div. 814; affd., 262 N. Y. 524.) Such an inference fades into nullity when confronted by uncontroverted proof to the contrary such as is here present. (*Matter of Findlay*, 253 N. Y. 1, 8.)

The alleged fact that Klein has acted on the erroneous supposition that his "divorce" from the present alleged widow possessed some validity and has remarried, is no concern of the parties to this proceeding and possesses no relevancy to a determination of these issues, being a matter only of potential interest to the district attorney.

It follows that since the alleged widow was never validly divorced from her former husband, such former marriage continued in force at all times and no marriage, either ceremonial or according to the common law, was possible of consummation between her and the decedent. She is, therefore, not his widow and is not entitled to receive letters of administration on his estate as such. Her application in this regard is accordingly denied, and letters will issue on the application of the son upon his due qualification according to law.

Enter decree on notice.