**UNITED STATES of America ex rel. Marianne CITROEN, Relator.**

v.

**Edward J. SHAUGHNESSY, District Director, Immigration and Naturalization Service, New York District, Respondent.**

United States District Court
S. D. New York.
June 2, 1955.

---

9. Keller v. President, Directors and Company of Farmers Bank, 41 Del. 471, 2 Terry 471, 476, 24 A.2d 539, 541.

Bennet, House & Couts, New York City, for relator (William S. Bennet, New York City, of counsel).

J. Edward Lumbard, U. S. Atty., New York City, for respondent (Lester Friedman, Atty., for Immigration and Naturalization Service, Harold J. Raby, Asst. U. S. Atty., New York City, of counsel).

WALSH, District Judge.

By petition for a writ of habeas corpus, relator seeks release from the custody of the Immigration and Naturalization Service, by which she is detained under an order and warrant of deportation. The petition is denied.

The relator was last admitted to the United States on July 1, 1953 as a nonimmigrant alien under § 101(a) (15) (H) (ii) of the Immigration and Nationality Act, 8 U.S.C.A. § 1101(a) (15) (H) (ii).[1] She was then in possession of a valid visa, the expiration date of which was June 30, 1955. At the time of her entry she was admitted by an immigrant inspector for a temporary period ending December 30, 1953. At no time did she apply for an extension of that period.

On January 14, 1954 she filed an application for adjustment of her status from nonimmigrant alien to that of a person admitted for permanent residence under § 245, 8 U.S.C.A. § 1255.[2] Her application was denied by the District Director, on the ground that she was ineligible for the relief sought, in that,

1. "(15) The term 'immigrant' means every alien except an alien who is within one of the following classes of nonimmigrant aliens—

    *     *     *     *     *

"(H) an alien having a residence in a foreign country which he has no intention of abandoning * * * (ii) who is coming temporarily to the United States to perform other temporary services or labor, if unemployed persons capable of performing such service or labor cannot be found in this country; * *".

2. "(a) The status of an alien who was lawfully admitted to the United States as a bona fide nonimmigrant and who is continuing to maintain that status may be adjusted by the Attorney General in his discretion (under such regulations as he may prescribe to insure the application of this paragraph solely to the cases of aliens who entered the United States in good faith as nonimmigrants) to that of an alien lawfully admitted for permanent residence as a quota immigrant or as a nonquota immigrant under section 1101(a) (27) (A) of this title, if (1) the alien makes application for adjustment, (2) the alien is admissible to the United States for permanent residence under this chapter, (3) a quota or nonquota immigrant visa was immediately available to him at the time of his application for adjustment, (4) a quota or nonquota immigrant visa is immediately available to him at the time his application is approved, and (5) if claiming a nonquota status under section 1101 (a) (27) (A) of this title he has been in the United States for at least one year prior to acquiring that status. * * * "

at the time of making the application, she no longer had lawful status as a nonimmigrant alien. The denial was adhered to on reconsideration, and was affirmed on appeal by the Assistant Commissioner. She subsequently filed another application for the same relief, on which no action has yet been taken.

The relator urges that she cannot be lawfully deported at the present time for four reasons.

(1) Since her visa does not expire until June 30, 1955 the action of the immigrant inspector, limiting the time of her stay to six months, was of no effect; and that accordingly on January 14, 1954 she still maintained the lawful status she had acquired on entry and should have been granted permanent resident status.

(2) The acceptance and retention of her application for permanent resident status and fee, passport and other documents by the Immigration and Naturalization Service constitutes a waiver of the statutory requirement that an applicant must continue to maintain his lawful status in order to be eligible for this relief.

(3) An alien cannot be deported while action is pending on an application for permanent resident status.

(4) An alien cannot be deported before receiving a tax clearance from the Treasury Department.

■ According to the statute and the regulations, relator's lawful status as a nonimmigrant alien terminated on December 30, 1953. § 214(a), 8 U.S.C.A. § 1184(a) [3] and 8 C.F.R. 214.1.[4] She thereafter was a deportable alien under § 241(a) (9), 8 U.S.C.A. § 1251(a) (9).[5] The fact that her visa did not expire until a later date does not affect that result. See 22 C.F.R. 41.15.[6] Therefore at the time of her initial application, January 14, 1954, she was not one of the class (lawfully admitted nonimmigrant aliens, who had continued to maintain that status), in whose favor the Attorney General was empowered to exercise his discretion.

The only question of importance was whether there was administrative discretion to waive relator's failure to seek permanent residence status until two weeks after the expiration of her lawful status as nonimmigrant alien. It was this conclusion of law which was the basis for the denial of the relief relator sought.

■ Relator has cited no authority, and this court can find none, under which the Attorney General could waive relator's noncompliance with the statute on

---

3. "(a) The admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe, * * *."

4. "214.1 *Time for which nonimmigrants may be admitted.* The maximum period for which a nonimmigrant may be admitted initially to the United States shall be whatever period the admitting officer deems appropriate to accomplish the intended purpose of the alien's temporary stay in the United States, * * *."

5. "(a) Any alien in the United States * * * shall, upon the order of the Attorney General, be deported who—

* * * * *

"(9) was admitted as a nonimmigrant and failed to maintain the nonimmigrant status in which he was admitted * *."

6. "41.15 *Validity of nonimmigrant visa.* (a) The period of validity of a nonimmigrant visa shall date from the time of issuance and shall relate only to the period during which the alien to whom the visa was issued may use it in making application for admission into the United States and shall have no relation to the period of time he may be authorized to stay or remain in the United States, if, upon his arrival at a port of entry, he is admitted into the United States by the immigration authorities. Except as provided in paragraphs (c) and (d) of this section, the bearer of a nonimmigrant visa may, within the period of its validity, make any number of applications for admission into the United States: *Provided,* * * * his nonimmigrant status shall not have changed."

448

the basis of its insignificance. The legislative history of the section in question shows that it was a liberalization of the old rule which required all nonimmigrant aliens to leave the country and re-enter in order to get legal status as permanent residents, and that Congress intended its benefits only for those who maintain the legal nonimmigrant status acquired on their entry. H.Rep. 1365, 82 Cong., 2 Sess., 2 U.S.Code Congressional and Administrative News, 1952, pp. 1653, 1719. The pattern of the statute in this regard is rigid rather than flexible. Neither it nor its legislative history supplies any basis for implying power to grant relief here. Relator's attempt to remain here without leaving and returning with legal status is a waste of time, money and effort.

Petition denied.