257 F.2d 306
 Matter of the Petition for Review of Mirza M. SHIKOH,
Petitioner-Appellant,
v.
John L. MURFF, as District Director of the Immigration and
Naturalization Service for the District of New
York, Respondent-Appellee.
 No. 377, Docket 25013.
 United States Court of Appeals Second Circuit.
 Argued May 9, 1958.
Decided June 27, 1958.
 
 1
 Marchetti & Ehrlich, New York City (Joseph A. Marchetti, New York City, of counsel; Ira Ehrlich, New York City, on the brief), for petitioner-appellant.
 
 
 2
 Paul W. Williams, U.S. Atty. for Southern District of New York, New York City (Roy Babitt, Sp. Asst. U.S. Atty., New York City, of counsel), for respondent-appellee.
 
 
 3
 Before WATERMAN and MOORE, Circuit Judges, and GALSTON, District judge.
 
 
 4
 GALSTON, District Judge.
 
 
 5
 Petitioner appeals from two final orders of the District Court for the Southern District of New York. The first of these orders denied petitioner's motion for an injunction pendente lite and vacated a temporary restraining order contained in the order to show cause by which the motion was brought on. The second order granted respondent's cross-motion for summary judgment dismissing petitioner's complaint. The petition sought to review the action of the Immigration and Naturalization Service in ruling against petitioner's application for adjustment of his status from that of a non-immigrant student temporarily in the United States to that of an alien lawfully admitted to permanent residence by reason of his marriage to an American citizen. (101(a)(27)(A) and 245 of the Immigration and Nationality Act, 8 U.S.C.A. 1101(a)(27)(A) and 1255.)
 
 
 6
 Appellant, a native of India, came to the United States as a non-immigrant student in 1947. Subsequently that part of India wherein he lived became Pakistan, and consequently appellant is now considered as a citizen and national of Pakistan. Prior to arrival in the United States appellant married one Izzat Jahan Begum, a native of India now residing in Pakistan, and there were three children of said marriage. Since the appellant has been in the United States he has obtained extensions of his temporary stay in the United States in order that he might complete his studies. His present stay expires August 15, 1958.
 
 
 7
 On August 22, 1955, appellant appeared before the Reverend Sheikh Daoud Ahmed Faisal, Spiritual Head and National Director of the Islamic Mission of America, Inc., for the propagation of Islam, at his office in Brooklyn, New York, and declared that he wished to be divorced from his wife. The appellant thereupon signed his name to a writing declaring that his marriage was dissolved, which writing was witnessed by two persons and which contained at the end thereof a declaration by the Reverend Sheikh that in exercise of the authority vested in him in accordance with the laws of Islam and 'in conformity of the laws of the Government of the United States of America,' he declared the appellant and his wife to be divorced. The said writing signed by appellant and by the Reverend Sheikh was entitled 'Certificate of Divorce' and said certificate was registered at the Consulate General of Pakistan in New York, and copies thereof sent to appellant's wife by the Consulate General.
 
 
 8
 Thereafter, on November 14, 1956, appellant applied for and received a marriage license from the Clerk of the City of New York and thereupon married a native of the United States of America on January 11, 1957. In August 1957 appellant filed an application for adjustment of his status from that of a non-immigrant student to that of an alien lawfully admitted to permanent residence predicated upon his marriage to an American citizen. The Immigration and Naturalization Service required appellant to prove such relationship and he thereupon produced the marriage record and the Certificate of Divorce granted by the Reverend Sheikh Daoud Ahmed Faisal in Brooklyn on August 22, 1955. The District Director of the Immigration and Naturalization Service denied the application under date of August 22, 1957 upon the ground that the alleged divorce was invalid and that therefore the subsequent marriage to an American citizen was null and void.
 
 
 9
 Appellant appealed from the decision of the District Director to the Regional Commissioner, who affirmed the order of the District Director in October 1957. Thereafter appellant commenced this action to review the rulings of the Immigration and Naturalization Service.
 
 
 10
 Article 1, 9, of the Constitution of the State of New York provides in part: '* * * nor shall any divorce be granted otherwise than by due judicial proceedings; * * *.' The nature of the judicial proceedings required for a divorce in New York are set forth in 1147 of the Civil Practice Act of the State of New York indicating that a divorce will be granted by reason of the defendant's adultery where both parties were residents of the state when the offense was committed, or where the parties were married within the state, or where the plaintiff was a resident of the state when the offense was committed and is a resident when the action is commenced, or where the offense was committed within the state and the injured party, when the action is commenced, is a resident of the state.
 
 
 11
 There can be no doubt that the actions of the appellant before the Reverend Sheikh Faisal in Brooklyn failed to constitute a judicial proceeding within the meaning of the laws of the state, nor were the conditions of the Civil Practice Act complied with.
 
 
 12
 The divorce which appellant seeks to sustain is similar to religious divorces upon which there have been rulings by New York courts.
 
 
 13
 In Chertok v. Chertok, 208 App.Div. 161, 203 N.Y.S. 163, a rabbinical divorce was obtained in New York by one of the parties to the marriage who was then residing in New York. Thereafter that divorce was effected in Russia, the original matrimonial domicile of the parties. The Court held that the rabbinical divorce obtained in New York by a resident of New York was wholly invalid. This case differs from the case at bar in that one of the parties was resident of New York when the divorce was obtained.
 
 
 14
 In Matter of Goldman's Estate, 156 Misc. 817, 282 N.Y.S. 787, a similar situation, one of the parties to the marriage entered the United States and became a permanent resident, and while in this state as a permanent resident obtained a rabbinical divorce in New York. Here again the divorce was held a nullity.
 
 
 15
 Other cases to the same effect are In re Cherney's Estate, 162 Misc. 764, 295 N.Y.S. 567; In re Spiegel, D.C., 24 F.2d 605.
 
 
 16
 Conversely it has been frequently held that a religious divorce, valid in the jurisdiction where granted, is valid here, provided that both parties to the marriage were properly subject to the jurisdiction of the tribunal granting the decree. In these circumstances comity requires recognition of foreign religious divorces. Miller v. Miller, 70 Misc. 368, 128 N.Y.S. 787; Leshinsky v. Leshinsky, 5 Misc. 495, 25 N.Y.S. 841. See Saperstone v. Saperstone, 73 Misc. 631, 131 N.Y.S. 241. Matter of Rubinstein's Estate, 143 Misc. 917, 257 N.Y.S. 637. In none of these cases was the divorce granted in New York, but rather in the foreign jurisdiction which permitted a religious divorce. Indeed, in Miller v. Miller, supra, the court, though acknowledging the validity of a rabbinical divorce granted in Russia, stated, 70 Misc. at page 373, 128 N.Y.S. at page 790:
 
 
 17
 'A rabbinical divorce granted here would have no validity.'
 
 
 18
 Non-judicial divorces generally have been recognized so long as they were performed within the foreign jurisdiction which permitted them. For instance, legislative divorces have been recognized so long as they were obtained by domiciliaries of states which permitted them and performed within said states. Starr v. Pease, 1831, 8 Conn. 541; Levins v. Sleator, 1850, 2 G. Green, Iowa, 604; Cabell v. Cabell, 1858, 1 Metc., Ky., 319; Adams v. Palmer, 1863, 51 Me. 480; Clark v Clark, 1839, 10 N.H. 380.
 
 
 19
 Indian divorces have been recognized provided that they were rendered on Indian reservations by Indians resident therein. Marris v. Sockey, 10 Cir., 170 F.2d 599, certiorai denied 336 U.S. 914. 69 S.Ct. 605, 93 L.Ed. 1078; LaFramboise v. Day, 136 Minn. 239, 161 N.W. 529, L.R.A. 1917D, 571; James v. Adams, 56 Okl. 450, 155 P. 1121. (In New York by statute the Peacemakers Court on certain reservations is given exclusive jurisdiction to grant divorces between Indians resident on such reservations. McKinney's New York Consol. Laws, Vol. 25, 46.)
 
 
 20
 Divorce by executive decree has been recognized provided that it is granted in the jurisdiction permitting said form of divorce between domiciliaries of that jurisdiction. Sorenson v. Sorenson, 122 Misc. 196, 202 N.Y.S. 620.
 
 
 21
 Lord Penzance in Wilson v. Wilson, L.R. 2 P. & D. 442, said in a comment quoted extensively by courts in England and in the United States:
 
 
 22
 'Different communities have different views and laws respecting matrimonial obligations, and a different estimate of the causes which should justify divorce. It is both just and reasonable, therefore, that the differences of married people should be adjusted in accordance with the laws of the community to which they belong, and dealt with by the tribunals which alone can administer those laws.'
 
 
 23
 We agree with this analysis and believe that the purported divorce in the case at bar could be valid only when granted in Pakistan.
 
 
 24
 Appellant has cited cases sustaining the validity of foreign divorces obtained while the parties thereto were physically present within the United States. Weil v. Weil, Dom.Rel., 26 N.Y.S.2d 467; Oettgen v. Oettgen, 196 Misc. 937, 94 N.Y.S.2d 168; Hansen v. Hansen, 255 App.Div. 1016, 8 N.Y.S.2d 655. While the parties in those cases were physically within the United States, the divorces were actually granted in the foreign jurisdictions in which the parties were domiciled. Here, even though the matrimonial domicile of the parties remained in Pakistan, the divorce was granted in Brooklyn before the Reverend Sheikh Faisal, who proclaimed the divorce valid not only in accordance with the courts of Islam but also in conformity with the laws of the Government of the United States of America.
 
 
 25
 Appellant cites Kapigian v. Minassian, 212 Mass. 412, 99 N.E. 264, as being decisive of the case at bar. In that case the husband and wife were married in Turkey and were of the Christian faith. Under Turkish law, whenever a wife renounces Christianity, embraces the Mohammedan religion and marries a Mohammedan, by virtue of those acts her previous marriage becomes null and void. The wife did exactly those things in Turkey, and thereafter the husband remarried, which remarriage was held valid by the courts of the State of Massachusetts. This case indicates the willingness of our courts to recognize foreign divorces, even though they be non-judicial. However, it appears clearly that the non-judicial divorce recognized by Massachusetts occurred by virtue of acts which took place in Turkey and the application of the Turkish laws to those acts.
 
 
 26
 Though a divorce secured in the manner indicated in the case at bar would appear to be valid when obtained in Pakistan, and if so obtained might well receive recognition here, nevertheless it was not valid when obtained in the territorial jurisdiction of New York. While a divorce decree rendered in a foreign jurisdiction between persons domiciled therein is recognized in the United States because of the requirements of international comity, nevertheless this recognition does not extend to divorces obtained within the territorial jurisdiction of the State of New York between persons not domiciled therein. Where the divorce is obtained within the jurisdiction of the State of New York, it must be secured in accordance with the laws of that State. The orders are affirmed.