**Nicholaos ANGELIS, Plaintiff,**

v.

**E. P. BOUCHARD, District Director of Immigration and Naturalization Service, and W. J. Wyrsch, Deputy District Director of Immigration and Naturalization Service, Defendants.**

**Civ. A. No. 883–59.**

United States District Court
D. New Jersey.

Feb. 29, 1960.

Horace G. Davis, Jersey City, N. J., for plaintiff.

Chester A. Weidenburner, U. S. Atty., Newark, N. J., by Charles H. Hoens, Jr., Asst. U. S. Atty., Newark, N. J., for defendants.

WORTENDYKE, District Judge.

In this case the plaintiff alien seeks a review of a denial of his application, made pursuant to section 245 of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1255, for an adjustment of his status from that asserted to be a bona fide nonimmigrant to that of an alien lawfully admitted for permanent residence as a nonquota immigrant.

The District Director denied the application on the ground that plaintiff was not a bona fide nonimmigrant at the time of his last admission to the United States. From this denial plaintiff appealed to the Regional Commissioner, pursuant to 8 C.F.R. § 7.1(6), who affirmed the denial.

Invoking the Declaratory Judgments Act, 28 U.S.C. § 2201 et seq., and the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., as was done in Shikoh v. Murff, 2 Cir., 1958, 257 F.2d 306, the plaintiff seeks, in this Court, an adjudication that the hearing granted to him upon his application for adjustment of status was insufficient and unfair, and that the denial of his application was contrary to law. He therefore seeks a hearing de novo upon his application, and interim injunctive relief against his threatened deportation.

In consequence of the denial of plaintiff's application for adjustment of status he was ordered to depart the United States on or before October 17, 1959, and, by this Court's order of that date the defendants were directed to show cause why his arrest and deportation should not be enjoined. Upon return of this order, briefs were submitted and oral argument made by the parties upon the issue of the legality and propriety of the Section 245 proceedings before the Immigration and Naturalization Service upon the allegations of the complaint, the exhibits annexed thereto and the record below.

Plaintiff has annexed to his complaint copies respectively of the District Director's denial of his application, dated May 4, 1959, and of the decision of the Acting Regional Commissioner, dated September 10, 1959, affirming the District Director. From the recitals in the decision by the Regional Commissioner it appears that plaintiff is a 26 year old married male, a native and citizen of Greece, who last arrived in the United States at the Port of New York, on October 17, 1958, as a crewman aboard the S.S. Theopan. He was admitted upon his arrival for a period of time during which the vessel remained in port, not to exceed 29 days, pursuant to 8 U.S.C.A. § 1282(a) (1), but remained ashore without legal authority until March 13, 1959, when the application under review was submitted. It was also found that plaintiff had previously entered the United States on October 15, 1956, also as an alien crewman, and on that occasion, as well, overstayed his conditional permit. Pursuant to the provisions of an administrative order to show cause dated November 19, 1956, plaintiff was granted the privilege of departing the country voluntarily on or before December 23, 1956. He thereupon disappeared, and his whereabouts were unknown until May of 1958, during which month he submitted an application for preexamination, claiming quota availability by reason of his marriage, on April 24, 1958, to a citizen of the United States. In the course of an investigation of the preexamination application, ex parte affidavits were obtained from plaintiff's then wife, Harriet Oswin Angelis, and her mother, indicating that the marriage had never been consummated and that the principals had never lived together since the ceremony. A motion to reopen deportation proceedings during the pendency of the application for preexamination was denied by a Special Inquiry Officer on July 8, 1958 and on July 16, 1958, the plaintiff left the United States under a deportation order. It further appears that on February 26, 1959, plaintiff secured an annulment of the aforesaid marriage, and on March 7, 1959, married another United States citizen, Jennie Giannakis, whose petition in plaintiff's behalf, to accord him nonquota immigrant status, was approved.

The District Director denied plaintiff's application for status as a permanent resident upon the ground that the earlier of the two marriages referred to was entered into by the plaintiff for the sole purpose of obtaining the benefits of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1101 et seq., and that he was thereafter deported. The Director found that plaintiff's reentry into the

United States on October 17, 1958, was without the required prior permission to reapply for status as a permanent resident, and that the annulment of plaintiff's earlier marriage afforded no basis for the grant of permission to reapply by reason of the provisions of Section 212.2 of Title 8 of the Code of Federal Regulations. The District Director took the position that plaintiff was not a bona fide nonimmigrant at the time of his entry into the country, after having been previously deported, without having obtained prior permission from the Attorney General to reapply.

The Regulation referred to, insofar as applicable, provides as follows:

"Any alien who is excludable under paragraph (16) or (17) of section 212(a) of the act and who has a * * * spouse * * * who is a United States citizen or an alien lawfully admitted to the United States for permanent residence, is hereby granted permission to reapply for admission to the United States, except that this grant of permission to reapply shall not be regarded as a waiver of grounds of excludability as provided in section 5 or 7 of the Act of September 11, 1957 [8 U.S.C.A. §§ 1182b, 1251a]"

Counsel for plaintiff in the departmental proceedings sought to overcome the District Director's denial of adjustment of status by submitting an application for permission to reapply for admission after deportation, and requested that such application be granted nunc pro tunc. The Regional Commissioner held that the application for permission to reapply nunc pro tunc was moot because the applicant had a United States citizen spouse on October 17, 1958, and, therefore, had permission to reapply under the provisions of 8 C.F.R. § 212.2 as revised January 8, 1958. Nevertheless, the Regional Commissioner found plaintiff ineligible for adjustment of status under 8 U.S.C.A. § 1255(a) because of his record as an abscondee, his failure to report his address, his desertion from his vessel, his "cloudy" marriage, and the dubiousness of the purpose of his then more recent marriage. Accordingly, the discretion reposed by the statute in the Attorney General, and duly delegated by him to the Regional Commissioner, was exercised adversely to the application and its denial by the District Director was affirmed.

In his signed sworn statement, given to Immigration Officer Frank G. Hayden on November 15, 1956, plaintiff stated that he had last previously entered the United States at Philadelphia on October 16, 1956, as a crewman of the S.S. Evicynthia upon a landing permit, for the purpose of going to New York City to get some rest, and with the intention of reshipping within fifteen days. He had theretofore previously entered as a crewman at Baltimore, Maryland, in 1953. He stated that he desired to apply for the privilege of voluntary departure at his own expense in about a month, and had been promised a berth as a crewman on the S.S. Afros, sailing about December 8, 1956.

Upon return of the order to show cause on November 23, 1956, plaintiff was accorded a hearing, was sworn, waived counsel, and admitted his entry of October 16, as a nonimmigrant crewman for the limited period expiring November 14. He also admitted that he overstayed his permit and reiterated his request for leave to depart the United States voluntarily, in lieu of deportation. An order for his voluntary departure on or before December 24, 1956 was made accordingly, with the alternative of submission to deportation on December 26th. His whereabouts thereafter were unknown to the Immigration and Naturalization Service until May 13, 1958, when Leo E. Ypsilanti, Esq., a member of the New York Bar, representing himself as attorney for plaintiff, wrote to the Immigration and Naturalization Service, enclosing an application for preexamination, with fee and copies of certificate of his marriage, dated April 24, 1958, to Harriet Oswin, and of her birth certificate. Thereupon the Deputy Director ordered an investigation, and obtained from

plaintiff's wife, Harriet Angelis, an affidavit sworn to June 25, 1958 at the home of her parents, 243 South 11th Street, Newark, New Jersey, which disclosed that, on April 24, 1958, the day of her marriage to the plaintiff, she had attended at the office of plaintiff's attorney in New York City, where she signed some papers, the nature and effect of which she did not indicate. She further stated that following the marriage ceremony plaintiff left her, and that they had never lived together as husband and wife. She also said that about a week later plaintiff told her, in her mother's presence, that the only way he could remain in the country was to get married, and that if she reported this to the I.N.S., she would be imprisoned and he would be returned to Greece. She also stated that about a month prior to the date of making her affidavit, plaintiff came to her home and had her sign some papers without telling her what they were for, that she signed them, and that he told her that it was necessary that he bring them back to his lawyer in New York City. On June 26, 1958 (the day following the making of this affidavit) I.N.S. Investigator Frank P. Salierno interviewed plaintiff's said wife at the office of the Service, in Newark. Waiving counsel there, and testifying under oath, Harriet said that she was living with her father and mother at 463 South 11th Street, Newark; that she married the plaintiff on April 24, 1958 at a church in Newark; that the plaintiff had never lived with her, that they had never cohabited as husband and wife, and that she was induced to marry him by his promise to become a good father for her previously born son. She also stated that on the day of, but following the marriage, he told her he did not want to live with her and that she would have a divorce in about four months. She also stated that prior to the marriage she and the plaintiff had visited his lawyer in New York City, where she signed certain papers at the lawyer's request. She was shown I.N.S. Form No. I-133, upon which she identified her signature, but was unable to say whether the document was one of those which she had signed at the lawyer's office. She further testified that the post-nuptial papers which she signed at her parents' home, at her husband's request, were signed in the presence of her parents and her brothers. The same investigator interviewed Harriet's mother, Mrs. Emma Oswin, who stated, also under oath, that following the marriage ceremony, the plaintiff told her that although he had married Harriet, he did not want to stay married to her; that he did not want anyone to know he had gotten married; and that in less than two months he was getting a divorce.

On July 2, 1958, plaintiff's attorney filed his own affidavit with the Service, sworn to June 30, 1958, stating that plaintiff and his wife had lived together continuously since the marriage; that on May 13, 1958 plaintiff's wife had filed a petition for the issuance of a nonimmigrant visa to the plaintiff; and that the plaintiff had taken steps to obtain an immigrant visa for permanent residence in this country. It appears that the representation made in the attorney's affidavit that plaintiff and Harriet had lived together continuously as husband and wife since the marriage, was false, as was its statement that Form I-133 for the issuance of the nonimmigrant visa, was duly executed by the wife. However, upon the foregoing papers the attorney moved for a reopening and reconsideration of plaintiff's case for the purpose of applying for the privilege of pre-examination and voluntary departure, for a hearing, and for a withdrawal of the warrant for deportation dated July 7, 1958. Plaintiff's motion to reopen the deportation proceedings was denied by the Special Inquiry Officer by order dated July 8, 1958, and the warrant for deportation was executed July 16, 1958. Again plaintiff disappeared from official notice until March 16, 1959. During that time interval he had reentered the United States on October 17, 1958, as an alien crewman, secured an annulment of his marriage to Harriet in Arkansas on February 26, 1959, and married Jennie

Giannakis, another United States citizen, on March 7, 1959.

When plaintiff filed his application for adjustment of status on March 16, 1959, 8 U.S.C.A. § 1255 (Pub.L. 85–700, § 1, Aug. 21, 1958, 72 Stat. 699), provided as follows:

"§ 1255. Adjustment of status of nonimmigrant to that of person admitted for permanent residence * *.

"(a) The status of an alien who was admitted to the United States as a bona fide nonimmigrant may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, (3) an immigrant visa was immediately available to him at the time of his application, and (4) an immigrant visa is immediately available to him at the time his application is approved. * * *"

The foregoing section, as amended, effective August 21, 1958, had been HR 13451, which was favorably reported by the Committee on the Judiciary of the Senate in its Report No. 2133 of August 4, 1958 (U.S.Code Cong. & Adm.News 1958, p. 3698). That report stated the purpose of the bill to be "(1) to revise section 245 of the Immigration and Nationality Act in such manner as to broaden the discretionary authority of the Attorney General to adjust the status of certain aliens admitted to the United States temporarily as nonimmigrants to that of aliens lawfully admitted for permanent residence in worthy cases, * * *." The report also points out that section 245 as it was before the enactment of the bill provided that "the status of an alien who was lawfully admitted to the United States as a bona fide nonimmigrant and who is continuing to maintain that status may be adjusted by the Attorney General to that of an alien

lawfully admitted for permanent residence * * * as a nonquota immigrant who is the spouse * * * of a United States citizen, under certain * * * conditions. Those conditions are that the alien must make application for the adjustment; the alien must be admissible to the United States for permanent residence; a * * * nonquota immigrant visa must be immediately available at the time the alien makes his application and also at the time his application is approved and if the alien claims nonquota status as the spouse * * * of a United States citizen, he must have been in the United States for at least 1 year prior to acquiring that status. * * * The language of the instant bill has been carefully drawn so as not to grant undeserved benefits to the unworthy or undesirable immigrant. This legislation will not benefit the alien who has entered the United States in violation of the law. Further, this legislation does not affect the statutory standards of eligibility for immigration into the United States * * *. In conformity with the existing statutes, the language of the bill has been drawn so as to permit its application to the cases arising thereunder pursuant to all the discretionary powers of the Attorney General to waive or grant exceptions from the grounds of exclusion relating to aliens seeking immigrant visas including, but not limited to, the Attorney General's powers under the act of September 11, 1957." P.L. 85–316, 71 Stat. 641, 8 U.S.C.A. § 1255a.

This Court's own research corroborates counsel's stated inability to find any case specifically dealing with section 245 of the Immigration and Nationality Act, as amended August 21, 1958. Although he would otherwise have been excludable under § 212(a) (16) of the Act, 8 C.F.R. § 212.2 enables plaintiff to overcome the obstacle of his prior deportation, by reason of having married his second wife, Jennie, on March 7, 1959. Because he had a wife who was a United States citizen, he was authorized, by 8 C.F.R. 212.2, to reapply for admission to the United States despite his prior deportation.

The section of the Regulations relied upon also required that the applicant be an alien "eligible to receive an immigrant visa and * * * admissible for permanent residence." As the spouse of a citizen of the United States, plaintiff would, as a nonquota immigrant, 8 U.S.C.A. § 1101(a) (27) (A), be eligible to receive an immigrant visa, provided he was "admissible to the United States for permanent residence." 8 U.S.C.A. § 1255 (a). There was substantial evidence before the District Director that plaintiff had not lawfully entered the United States as a bona fide nonimmigrant. See United States ex rel. Feretic v. Shaughnessy, 2 Cir., 1955, 221 F.2d 262, certiorari denied 1955, 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735; Tsimounis v. Holland, D.C.E.D.Pa.1955, 132 F.Supp. 754, affirmed 3 Cir., 1956, 228 F.2d 907; Mascarin v. Holland, D.C.E.D.Pa.1956, 143 F.Supp. 427; Lukman v. Holland, D.C.E.D.Pa.1957, 149 F.Supp. 312.

The contentions of the parties here are emphatically at variance respecting the right of judicial review of the administrative proceedings below. Plaintiff contends that the right of such review is afforded by section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009; while the defendants contend that the terms of that section, when read in the light of the appropriate construction of section 245 of the Immigration and Nationality Act, expressly preclude such review because the agency action below was, by law, committed to agency discretion. In MacKay v. McAlexander, 9 Cir., 1959, 268 F.2d 35, 40, the Court of Appeals affirmed the District Court in refusing to set aside a deportation order, and in affirming administrative denial of an application for a suspension of the deportation. That case pointed out that the granting of suspension of deportation to one who, because of hardship, would be eligible therefor "is an act of grace entrusted to the discretion of the Attorney General or his delegate." In support of this proposition the Court cited Jay v. Boyd, 1956, 351 U.S. 345, at page 353, 76 S.Ct. 919, at page 924,

100 L.Ed. 1242, adding that judicial review of the exercise of such administrative discretion is confined within the extremely narrow limits pointed out in Cakmar v. Hoy, 9 Cir., 1959, 265 F.2d 59, 61. In the Cakmar case, the administrative application was for a stay of deportation under § 243(h), 8 U.S.C.A. § 1253(h), which authorized the Attorney General to withhold deportation of any alien "to any country in which in his opinion the alien would be subject to physical persecution and for such period of time as he deems to be necessary for such reason." In affirming the District Court in its judgment sustaining the denial of a stay of deportation, the Court of Appeals reemphasized the long-established principle that because of the statutory discretion reposed in the Attorney General an alien is not entitled to a hearing as of right. The Attorney General may act upon such application or not, as he may choose, and neither section 5 nor section 10 of the Administrative Procedure Act entitles the applicant to judicial review of the denial of his application. While the opinion stated that the Court had jurisdiction to determine whether the alien was accorded constitutional due process, "8 U.S.C.A. § 1253(h) is a statute coming within the terms of 5 U.S.C.A. § 1009, rather than 5 U.S.C.A. § 1004."

Another case involving an application for suspension of deportation, although brought under the 1917 Immigration Act, is Arakas v. Zimmerman, 3 Cir., 1952, 200 F.2d 322, in which the Court of Appeals was confronted with the question whether the applicant for suspension of deportation had been accorded due process. The Court followed United States ex rel. Kaloudis v. Shaughnessy, 2 Cir., 1950, 180 F.2d 489, in its holding that "The decision of the Attorney General in refusing discretionary relief to a deportable alien is not subject to judicial review, at least where the ground stated for the refusal is not 'on its face insufficient.'" [200 F.2d 324] To a similar effect see United States ex rel. Zabadlija v. Garfinkel, 3 Cir., 1949,

173 F.2d 222. The statutory language construed in the foregoing cases, as compared with that of section 245, as amended by the act of August 21, 1958, and the legislative history of the latter amendatory enactment impels me to the conclusion that the decision of the Attorney General's duly delegated representatives upon an application for adjustment of status under the section referred to is purely discretionary, and therefore not judicially reviewable. See United States ex rel. Citroen v. Shaughnessy, D.C.S.D.N.Y.1955, 132 F.Supp. 445; Naselli v. Holton, D.C.Ill.1956, 138 F.Supp. 893.

Upon the record presented I can find no basis for conclusion that plaintiff was deprived of constitutional due process. In addition to plaintiff's written application for adjustment of status embodied in Form 1–507 as prescribed by 8 C.F.R. § 245.1 and prepared under the guidance of his attorney, the District Director and the Regional Commissioner had before them plaintiff's complete immigrational dossier covering the previous deportation proceedings in which he had been involved. This material included the evidence upon which the deportation warrant of July 7, 1958 had been made, the execution of which plaintiff had unsuccessfully endeavored to forestall or delay. Although used in the deportation proceedings, that evidence was still available for consideration upon the section 245 application and relevant to the issue whether the discretion invoked should or should not be exercised in favor of the application. Although the decision of the District Director was expressly grounded only upon his construction of the effect of the marriage annulment decree upon plaintiff's right to make the application, all of the other material constituting plaintiff's dossier was available as additional justification both to the District Director and to the Regional Commissioner for denying the application. Plaintiff, therefore has shown no denial of constitutional due process. Indeed, the record discloses

sound exercise of the statutorily delegated discretion.

The order to show cause made in this cause on October 17, 1959 is discharged and the complaint herein is dismissed. Submit appropriate order.